HICKS, superintendent, et al. v. GROVES et al.; et vice versa.

Nos. 9604, 9605.   August 10, 1933.
Adhered to on rehearing, September 26, 1933.

*L. L. Porter, T. E. Hightower,* and *Burch & Daley,* for Hicks et al.

*G. C. Bidgood* and *R. Earl Camp,* contra.

Russell, C. J.   In 1924 the board of education of Laurens County issued certain warrants upon which the suit now before us is predicated.   These warrants were for services rendered in teaching, for hauling children to and from school, etc.   Most of them were transferred.   Some of the transferees and one of the original payees brought an equitable petition asking that the board of education and named banks (where portions of the school funds were deposited) be restrained from paying out the funds in their hands derived from the State appropriation for 1932, as well as the money which had already been collected and was to be collected from the county-wide school tax of 5 mills, and that the plaintiffs' claims be paid from such funds.   In ruling upon demurrers the judge held that the funds which accrued from the State appropriation were not subject to the claims of plaintiffs, but impounded such portion of the county-wide tax as had been collected, and also any further collections to be made upon the county-wide school tax of 5 mills.   The county school superintendent and the members of the board of education filed a bill of exceptions complaining of the impounding of the county-wide tax of 5 mills.   Thereafter the original plaintiffs, by cross-bill, excepted to so much of the judgment as refused to enjoin the payment of the State appropriation to the county board of education, and thereby declined to impound it as subject to plaintiffs' claim.   Two questions are thus seemingly presented, and so the main bill and cross-bill will be considered together. (1) Are funds appropriated by the General Assembly for the purpose of common schools, and allocated to the several counties in accordance with the law to maintain the schools of the State for a specific year, subject to be applied to the class of demands which are here presented?   (2) Is there any rule applicable to the funds

raised by county taxation, such as the 5 mills tax, different from that relating to the funds received from the State?

The precise point involved in the first question has not heretofore been adjudicated by this court. It was presented and ably argued in *Pearce* v. *Bembry*, 174 *Ga.* 86 (162 S. E. 125), but not passed on, because we held that the grant of mandamus in that case would be futile, inasmuch as it appeared that there were no funds in the hands of the board of education of Pulaski County upon which the order of the court could operate. Section 94 of the code of school laws (Ga. L. 1919, pp. 288, 327-328) provides: "On the first day of each month the county school superintendent of each county shall, under the approval of the county board of education, transmit to the State school superintendent an itemized statement of the various sums due and unpaid by the county board of education on said several dates mentioned in the preceding section whether the same be for teachers' salaries, for pay of the county school superintendent or for any other item of expense properly chargeable under the law to the county board of education, and when said itemized statements have been approved by the State school superintendent and presented to the Governor, the Governor shall issue his warrants upon the treasurer for all the funds standing to the credit of each of the several counties upon the books of the treasurer, or for such part thereof as may be needed to liquidate the indebtedness of the county board of education of such county, as shown by each itemized statement aforesaid. And the State treasurer shall, upon the presentation of the warrants aforesaid, draw his checks for the amount of said warrants in favor of the county school superintendent of the several counties and the State school superintendent shall immediately transmit said checks to the several county school superintendents, who shall promptly disburse the money so received in payment of the sums set out in the itemized statement aforesaid; and if the money is not sufficient to pay said sums in full, then it shall be prorated among the various items, provided that the expenses of administration for each month shall first be paid in full, and the county board of education are hereby authorized to make their contracts in such manner that the amounts payable to teachers for services rendered shall become due and payable monthly." Section 102 provides: "It shall be unlawful for any board of education to make any con-

tract involving the expenditure of funds in excess of the total appropriation for the current fiscal year. Any indebtedness created, contract made, or order or draft issued in violation thereof shall be void." We are of the opinion that under this law the judge correctly held that the funds, the payment of which he had temporarily restrained, should be released to the county school superintendent and its board of education. Sections 95-101, inclusive, of the code of school laws of 1919 expressly authorize the borrowing of money by the county board of education, and define specifically how and under what conditions. The law provides for the discount and transfer of warrants evidencing a debt for borrowed money. But in the case before us, as appears from the original petition, the warrants here involved represent only indebtedness for salaries of teachers and debts for transporting pupils to and from school. So far as appears from the record, no resolution was ever passed by the board of education authorizing the borrowing of money and entered upon the minutes as required by law. The case before us, therefore, is clearly distinguished from that of *Board of Education of Monroe County* v. *Thurmond,* 162 *Ga.* 58, supra. The case of *Board of Education of Houston County* v. *Board of Trustees of Fort Valley Consolidated School District,* 170 *Ga.* 509, supra, is likewise distinguished from the case at bar, because it concerned money borrowed by the Board of Education of Houston County from the Fort Valley Consolidated School District. In the case at bar, as has already been stated, there was no money borrowed, and no attempt to follow the provisions of law with reference to creating such indebtedness. Properly construing the petition, it must be assumed that the alleged indebtedness, if any, was created subsequently to the estimate forwarded by the county educational authorities to the State school superintendent under section 94, supra, and that it was in excess of the funds appropriated for the current year. This would have made the obligation void under section 102.

The General Assembly in 1910, for the first time, following the decision in *Williams* v. *Board of Education of Miller County,* 4 *Ga. App.* 637 (62 S. E. 154), authorized county boards of education to borrow money. (Ga. L. 1910, p. 76). "The county boards of education of the several counties of this State shall have the power and authority, whenever they deem it necessary, to borrow a

sufficient amount of money, and no more, to pay the salaries of the teachers in the public schools of their counties; provided, however, that no board of education shall have the right to borrow money to pay the salaries of the public school teachers of said county, for any time except the current school year in which it is so borrowed. Provided, that no board of education shall have authority under this act to borrow a sum of money greater in the aggregate than the sum to which the county may be entitled from the public school fund." It will be seen that under the terms of this act the money borrowed was not to be a liability against the income of the schools for future years, and was not to exceed the amount of money which was to be received from the State for the year in which it was to be expended. This act was superseded by the general code of school laws of 1919, and many more definite requirements tending to protect school funds were added by the provisions of sections 94 to 101 of the act of August 19, 1919, generally known as the code of . school laws of 1919. It is to be observed that the general code of school laws was approved upon the same day, August 19, 1919, on which another act was passed declaring "that from and after January 1, 1922, 50 per cent. of all revenue received by the State from all sources of income or taxation shall be used and expended for the support and maintenance of the common schools of Georgia *for the year in which said income and taxes are due and payable.*" [Italics ours.] It must not be overlooked, however, that it is not within the power of the General Assembly, by the passage of an act, to anticipate or affect the action of future legislation, and it would be within the power of future legislatures to change either the sources from which the revenue is anticipated or the proportion which should be allowed. But, regardless of all other questions as to the construction or validity of the act last mentioned, it clearly evidences the annual fiscal legislative policy that all State appropriations for school purposes must have a balanced budget at the end of the year, the provision being "for the year in which said income and taxes are due and payable." We deem this reference to the law which bears evidence of Georgia's magnificent liberality to her common-school system as having a very important bearing upon the point now before us. The court properly sustained so much of the demurrer as related to the school funds received by the county board of education from the State, dissolving a temporary restrain-

ing order impounding that fund, and remanding it to the control of the county school superintendent and the county board of education.

■ This case presents an instance where, though each of the parties in the lower court gained part of his contention, neither party was satisfied with anything less than the grant of his entire demand. *Hinc hic litem.* The school authorities, being of the opinion that they were entitled to the whole fund, excepted to the impounding of the fund arising from the county-wide 5 mills tax; and the plaintiffs, being equally and firmly of the opinion that they were entitled to subject the entire fund to their equitable claims, assigned error on the judgment sustaining the demurrer in so far as the petition related to funds derived from the State appropriation, and dissolving the restraining order impounding such funds and releasing them to the control of the county school authorities. We concur in the view of learned counsel for the plaintiffs in error in the cross-bill of exceptions, that (a) "There is no legal difference in the funds derived from the State and those derived from a county-wide tax to be recognized in paying the expenses for operating the public schools. (b) Because all funds coming into the hands of the superintendent of education from both sources constituted the common-school fund of Laurens County that could be legally applied by the board of education for the purpose of paying teachers and operating the public schools. (c) Because the court could not legally discriminate or separate the funds constituting the common-school money for the county." In the brief of learned counsel it is said: "There is but one common-school fund. In our county it is made up by appropriations from the State and a local levy of 5 mills. When the funds from these two sources are turned over to the county school superintendent, they constitute one common-school fund which can be disbursed only by the local board of education. School code, section 114."■ Counsel proceeds to argue: "If we are therefore entitled to impound the local 5 mills levy, we are likewise entitled to impound funds appropriated by the State." Per contra, since the court is holding that plaintiffs were not entitled to impound the local 5 mills levy, it will necessarily follow that the plaintiffs are not entitled to impound the funds appropriated by the State. Under section 112 of the code of school laws, no State funds can be received unless the

county board of education shows their ability to maintain their schools for six months. Under section 113, whenever a board of education shall fail in any year to make arrangements to put the schools in operation, it may forfeit all rights to participation in the public school fund of that year. Many counties might not be able to show their ability to maintain their schools for six months but for the fact that their county-wide tax, as well as local district school taxes, afford the nucleous around which the ability to maintain its schools for six months or longer can be assembled.

We are also of the opinion that ground 7 of the demurrer, as follows, should have been sustained: "Because it appears from said petition that if plaintiffs ever had a cause of action, same has been lost by laches on their part, and it would be inequitable and unjust to grant petitioners the relief prayed for." So far as disclosed by the petition, none of the warrants now sought to be collected were issued subsequently to the year 1924, and the petition in this case was not filed until February 17, 1933, more than eight years thereafter. It is therein alleged: "Petitioners show that payment of their several claims by the Laurens County school board of education has not been declined, nor has said school board repudiated said claims, but from year to year payment has been deferred to liabilities of more recent origin, which latter claims have taken all monies coming into the hands of said school department. The non-payment of petitioners' claims has been due solely to the failure of said school authorities to provide a fund out of which payment could be made. Petitioners have therefore not been guilty of laches in the premises." When these allegations are construed most strongly against the plaintiffs, as must be done on demurrer, they affirmatively show that a fund was provided from year to year immediately succeeding the issuance of the warrants, from which the warrants could have been paid; but the plaintiffs failed to pursue their remedies and allowed the fund to be diverted to other obligations. The petition merely seeks to end a practice which had continued during all of these years, and does not show that the plaintiffs are in any better position now to pursue their remedies than they were in the years immediately following the issuance of these warrants. The allegations that no such funds were provided, and that the plaintiffs were not guilty of laches, are mere conclusions of the pleader, contradicted by the other allegations in the same para-

graph, which, under the well-established rule of construction, indicates that such funds were provided. The right of the plaintiffs to enjoin the payment of current obligations, to the exclusion of their own claims, as they now seek to do, having apparently existed, if at all, for a period of more than eight years as fully as at the present time, the plaintiffs are barred by laches; and the demurrer raising this question should have been sustained, and the petition dismissed.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur except Atkinson, J., who dissents.*

BECK, P. J., and BELL, J. We concur in the judgment, because we are of the opinion that the claims of the plaintiffs are barred by laches. The whole petition should have been dismissed upon this ground; and upon this ground alone we concur in the judgment of reversal. We can not agree that the plaintiffs did not otherwise state a good cause of action; but, in the view which we take of the case, we deem it unnecessary to express any opinion as to whether payment of claims of the nature of those here involved should be limited to funds derived from the local tax.

ON MOTION FOR REHEARING.

RUSSELL, C. J. After full consideration of the motion for a rehearing, the opinion is modified by ruling upon the demurrer based upon the ground of laches, and the judgment heretofore rendered is adhered to.