LEWIS *v.* BOARD OF EDUCATION OF LOWNDES
COUNTY *et al.*

No. 11449. DECEMBER 4, 1936. REHEARING DENIED DECEMBER 16, 1936.

*Fred Powell* and *Wilcox, Connell & Wilcox,* for plaintiff.

*A. J. Little, Converse & Coleman,* and *Copeland & Dukes,* for defendants.

HUTCHESON, Justice. On April 18, 1936, J. F. Lewis, in behalf of himself and others similarly situated, brought a petition against Lowndes County, the Board of Education of Lowndes County, the secretary of said board, the superintendent of schools of said county, the tax-commissioner of the county, and the First National Bank of Valdosta, alleging substantially as follows: The board is indebted to petitioner upon a promissory note, due April 28, 1933, in the principal sum of $2,200, plus interest and attorney's fees, said note being a renewal note given for the balance due after successive renewals of a certain note for $7,000 evidencing a loan by petitioner to the board pursuant to a resolution passed at the regular monthly meeting of the board on March 26, 1932. The amount due the board from the public-school fund of the State for the year 1932 was far in excess of the $7,000, and far in excess of moneys borrowed by the board during the year. The board is further indebted to petitioner on certain warrants issued in the years 1930, 1931, and 1932, for legal and authorized expenses of administering and operating the schools of the county. Each of the claims evidenced by the warrants has been approved and audited, and all are for legitimate items of expense which can and ought to be paid out of the common-school fund of the county. These claims are admitted to be due and correct by the school authorities. During the fiscal years 1930, 1931, and 1932, the board did not make any contracts, create any indebtedness, or issue any orders or drafts which involved the expenditure of funds in excess of the funds received by the board from all sources for the support

of the county schools for the said fiscal years, or in excess of the total funds appropriated to the lawful uses of the board. A considerable portion of the funds received by the board during the years 1930, 1931, and 1932 was used to pay old debts which were valid and lawful obligations of the board. All of the indebtedness sued upon was incurred for the purpose of administering and operating the schools of the county for the years in which the debts were incurred. The claims of petitioner as evidenced by the warrants constitute equitable assignments of so much of the common-school fund as will be necessary to pay them in full, which entitles the petitioner to invoke the aid of a court of equity to preserve said fund and prevent its dissipation as hereinafter pointed out. The county school superintendent is custodian of the common-school fund, and he has said fund on deposit with the First National Bank. In addition there is a balance due the county from the school fund appropriated by the State for the past several years, and the tax-commissioner has on hand a large number of uncollected tax fi. fas. for the past several years, in which there is included a five-mill tax levy for the common-school fund of the county, all of which moneys, when collected, will be turned over to the superintendent of schools. The exact amounts of these various components of the common-school fund are unknown to petitioner, but can be readily ascertained by the defendants. It is the purpose of the board to apply all moneys now on hand and all moneys coming into their hands this year to the payment of liabilities created by the board for the current fiscal year; and on information and belief petitioner avers that such liabilities are sufficiently large to consume all of such funds. Before 1930 the board was heavily in debt, and during the years 1931 and 1932, when tax collections and money from the State were delayed, teachers and bus-drivers were paid by the warrants sued upon. From and after the year 1932 the board so arranged their budget that they would consume all moneys received for each current fiscal year in the operation of the schools for that year, thus making it impossible to pay any creditors who had advanced money to the board in previous years. Payment of petitioner's claims has not been declined by the board, nor have the claims been repudiated; but at various times the board has used its funds to pay debts of more recent origin than those of petitioner. He does not

know the exact amount of these claims alleged to have been paid. He is not able to show that the county school superintendent or the board now has on hand a sufficient common-school fund to pay his claims; and mandamus will not prevent the diversion of all available funds to the payment of liabilities of the board of more recent origin than those of petitioner. Discovery was waived. The prayers were for an order restraining the defendants from disbursing any of the funds on hand or to come into their hands until further order of the court; that the bank be required to answer under oath the amount of school funds on deposit; that all funds in the hands of any of the defendants or coming into their hands be impounded until it can be determined on what claims and in what proportion the funds should be applied; that petitioner's claims be paid out of any funds appropriated at any time for the purpose of operating the common schools of the county; for judgment upon the note and warrants; and for such further relief as the court may deem meet and proper. Demurrers to the petition were sustained, and the petitioner excepted.

■ The petitioner is seeking the aid of a court of equity in the collection of his claims against the school board, on the grounds that he has no adequate remedy at law for the collection thereof; that he has a legal right to compel the payment of the obligations on which he sues, but the processes of the law are inadequate to meet the exigencies of the situation as set forth in the petition. "Equity jurisdiction is established and allowed for the protection and relief of parties, where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrongs or relieving for injuries done." Code, § 37-102. However, "Equity is ancillary, not antagonistic, to the law; hence equity follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable." § 37-103. The rule that equity follows the law has become the first maxim of equity (*Carter* v. *Jordan*, 15 *Ga.* 76), and it can not override and control the positive enactments of the statutes. *Persoll* v. *Scott*, 64 *Ga.* 767.

■ Is there any statute of this State which, under the allegations of the petition, would deny to petitioner the right to payment out of the school funds from which payment is sought in the present case? We think there is. See Ga. L. 1925, p.

135, the particular provision of which, as Code § 32-947, denies petitioner such right under the case as made by the allegations of his petition. A careful study of the legislation in this State relating to the common schools, and particularly the act of 1919 (Ga. L. 1919, pp. 288, 363), and the act of 1925, supra, shows an intent on the part of the legislature to systematize and regulate the expenditure of the common-school funds so as to prevent an accumulation of burdensome debts by the boards of education over the State, and to provide for the operation of schools in such manner that the expenditures shall not exceed the income. County boards are given authority to borrow money to pay for the operation of the public schools of the county, "provided, that no board of education shall have authority to borrow a sum of money greater in the aggregate than the sum to which the county may be entitled from the public-school fund." Code, § 32-921. It is further provided that "It shall be unlawful for any board of education to make any contract involving the expenditure of funds in excess of the total appropriation for the current fiscal year. Any indebtedness created, contract made,. or order or draft issued in violation thereof shall be void." Code, § 32-928. The appropriation referred to in this section means funds received from all sources for the support of .the public schools for the current fiscal year. *McKenzie* v. *Board of Education,* 158 *Ga.* 892 (124 S. E. 721). Before any county is entitled to draw her proportionate share of the public-school funds from the State, the board of education of that county must furnish satisfactory evidence to the State superintendent of schools that arrangements have been made, by taxation or otherwise, for continuing the common schools for at least six months of the year (Code, § 32-939), and upon failure to do so such county shall forfeit all rights to participate in the school funds of the·State (§ 32-940). Under these preceding sections it is not unconditionally mandatory that the State disburse the public-school fund to the various counties; but the counties must first meet the qualifications set forth therein. Having so qualified to receive funds from the State, the boards of education of such counties are required, through the county superintendent of schools, to transmit to the State superintendent of schools on the first day of each month an itemized statement of the various sums due and unpaid by the county board, and after proper ap-

proval a warrant shall issue from the State treasurer for all the funds standing to the credit of the county, or a sufficient amount to liquidate the indebtedness as shown by the itemized statement. Code, § 32-920.

Another duty rests upon counties qualified to receive State funds. "Each county and independent public-school system receiving funds from the State shall annually, through its executive officer, make out and submit to the State board of education an estimated budget of its receipts from all sources and its proposed expenditures for the next year, . . and the filing of such estimated budgets shall be made before the State superintendent of schools may transmit to such public-school systems any of the State school funds for the year for which such budget is made." § 32-945. "The budgets provided for in this law shall be so made out as to properly systematize and classify the estimated receipts and proposed expenditures for the year, showing whether estimated receipts will be from the State, from the county, the district, the city, donations, bonds, or from other sources; and the estimated expenditures shall definitely set up amounts to be expended for 'administrative expenses,' 'instruction,' 'operating expenses,' 'maintenance,' 'buildings,' 'equipment,' 'debts,' or such other classifications as the State Board of Education may prescribe." § 32-946. When duly approved by the [State] board a copy shall be put on file in its office, and another copy sent to the State superintendent of schools, who shall then be authorized to send such funds as may be in his hands to the credit of the county or independent system, *and such county or independent system shall, in their expenditures of all public-school funds from whatever sources, conform to said budget.* No budget of expenses shall exceed its estimated income." § 32-947. (Italics ours.) The section last quoted controls the instant case. The petition affirmatively alleges that the county board from 1932 up to the filing of the petition had so arranged its budget that all moneys received for each fiscal year would be consumed in the operation of the schools for that year, thus making it impossible to pay any creditors of previous years. It is also alleged that the funds now on hand and coming into the hands of the defendants will be consumed by the payment of the current obligations as provided in the budget. It necessarily follows from such allegations, that, after the disburse-

ment of funds on hand and received from all sources in accordance with the budget, no funds will be left to pay petitioner's claims; and construing the allegations of the petition most strongly against the pleader, the allegations that there is now on deposit in the defendant bank a common-school fund, and "that in addition thereto there is a balance due Lowndes County from the common-school fund appropriated by the State for the past several years, and that the tax-commissioner of Lowndes County has on hand a large number of uncollected tax fi. fas. for the past several years, in which there is included a five-mill levy for the common-school fund of Lowndes County," do not show that such funds are funds appropriated for the years in which the indebtedness sued upon by petitioner were incurred. As we construe the Code, § 32-947, no funds, whether received from the State or local taxation, can be disbursed except in accordance with the budget filed with the State board of education; and no provision having been made by the county board in its budget for the expenditure of the funds included in the budget in payment of petitioner's claims, he has no right to compel payment out of such funds, and equity will not so override the statute as to grant petitioner the relief prayed for.

■ The rulings here made are not in conflict with those in *Baggerly* v. *Bainbridge State Bank*, 160 *Ga.* 556 (128 S. E. 766), *Board of Education of Monroe County* v. *Thurmond*, 162 *Ga.* 58 (132 S. E. 427), *Houston County* v. *Board of Trustees of Fort Valley Consolidated School District*, 170 *Ga.* 509 (153 S. E. 214), *Kite Consolidated School District* v. *Clark*, 171 *Ga.* 650 (156 S. E. 618), and *Hicks* v. *Grove*, 177 *Ga.* 574 (170 S. E. 877). In *Baggerly* v. *Bainbridge State Bank*, this court decided that where money borrowed by the trustees of a school district was used in defraying the lawful current expenses of operating a school in such district for the year 1924, to the payment of which expenses school funds of the district for that year, derived from taxes and otherwise, could be applied, the lender of such money could enjoin the expenditure of funds from taxes assessed for the year 1924 for the payment of expenses of this school for the year 1925, and could compel the payment of such debt from the funds derivable from taxes for the year 1924. In the instant case, as we have construed the allegations of the petition, there are no funds on

hand, nor are there any funds due which arise from taxes or from appropriations for the years in which the indebtedness sued upon was incurred, or the moneys secured thereby expended. The transactions involved in *Board of Education of Monroe County* v. *Thurmond,* arose before the act approved August 25, 1925, supra. This case last cited was followed in *Houston County* v. *Board of Trustees of Fort Valley Consolidated School District.* The transactions involved in that case also arose before the act of 1925. The statute was not invoked in *Kite Consolidated School District* v. *Clark,* or in *Hicks* v. *Grove.* This being true, it must be assumed that the act of 1925 had been complied with in those cases. Whether, when petitioner has established his right to compel by mandamus payment of his demands under a budget including his demands as a proper item of expenditure, the cases above cited will then be applicable, is not now for determination. In view of the above rulings the court did not err in sustaining the demurrers and dismissing the petition.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*