63379, 63757. HANLON v. THE STATE (two cases).

BANKE, Judge.

The appellant was indicted for the murder of his wife and was found guilty of voluntary manslaughter.

Police discovered the victim's body when they arrived at the appellant's apartment on the morning of February 15, 1981, in response to a suicide call. The appellant was observed to be in an intoxicated condition. Asked what had happened, he responded that he had strangled the victim about 3:00 a.m. that morning. A friend of the appellant's testified that the appellant had phoned him about 8:30 that morning claiming to have strangled his wife to death and to have ingested a poison. The friend reported this information to the police, and it was evidently in response to this information that they arrived at the appellant's apartment.

The appellant was arrested at the scene and taken to a hospital to have his stomach pumped. About 3:00 or 3:30 that afternoon, a detective visited him in his hospital room, told him that he was suspected of murder, and read him his Miranda rights. The detective described the appellant as being conscious, alert, and able to speak clearly and intelligently. The appellant told the detective that he did not want to "sign anything" until he had talked with his lawyer, but he admitted orally that he and his wife had gotten into a fight and that he had strangled her to death. A psychiatrist who interviewed the appellant about 4:00 or 5:00 that afternoon described him as follows: "His speech was slow, and he appeared to be dazed but he answered all questions rationally." The appellant told the psychiatrist that he and his wife had fought after he argued with her about her drug abuse, that she struck him on the head with a metal object, and that he lost his temper and strangled her.

A pathologist who had performed an autopsy on the victim's body testified that there were abrasions and bruises on the head, face, arm, knees, and other locations, and indicated that some of the bruises on the arm were of the type which would be incurred by using the arm to ward off blows. He stated that there were six areas of bruising on the head, some caused by blows from a blunt object and some caused by striking the head against a blunt object, such as the floor or the wall. In his opinion, death resulted from "the effect of brain injuries due to fractured skull caused by multiple injuries to the

head." He further indicated that had an ambulance been summoned in time, she would have survived.

Testifying in his own behalf, the appellant gave an account of the homicide which was consistent with the statements he had made to the officers at the scene, to the detective, and to the psychiatrist. He stated that his wife had come home during the early hours of the morning and that an argument had commenced about her use of drugs and her plans to go to Florida. She hit him with an ash tray, they struggled, a temporary calm prevailed, and she went to bed. Shortly thereafter, he entered the bedroom, sat down on the bed, and tried to talk to her, whereupon she kicked him and began hitting him with the telephone receiver. The appellant stated, "When she hit me, I couldn't . . . I mean, well, it was like you get a white flash. I really . . . I think I was both . . . I was angry, but I was probably more frightened than angry. I thought she was going insane." The appellant described his wife as a very slim woman, about 5′ 9″ tall and weighing less than 120 pounds, and said she was not as strong as he. *Held:*

1. The evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the appellant was guilty of voluntary manslaughter. Accordingly, the trial court did not err in denying the appellant's motion for directed verdict.

2. The trial court was authorized to conclude from the evidence that the appellant made his statements to the detective freely, voluntarily, intelligently, and without hope of reward or punishment. The fact that the appellant may have been under the influence of medications at the time does not require a contrary conclusion, since his speech was shown to be clear and coherent. See *Blanchard v. State,* 247 Ga. 415 (3) (276 SE2d 593) (1981); *Allen v. State,* 231 Ga. 17, 21 (200 SE2d 106) (1973). Moreover, these statements were merely cumulative of the statements which he had previously made to officers at the scene and statements which he subsequently made to the psychiatrist. Indeed, they were consistent with the account of the homicide which he offered at trial.

3. The appellant contends that the trial court erred in allowing a psychologist who had treated the victim for emotional disturbances to decline to answer questions about her on the ground that his conversations with her were confidential and privileged. The appellant sought to question this witness for the purpose of establishing that the victim had a "turbulent personality with ideation of suicide, which would be violence . . ."

Under Code Ann. § 84-3118 (Ga. L. 1951, pp. 408, 416), communications between psychologists and their clients are privileged to the same extent as communication between attorney and client. See generally *Cranford v. Cranford,* 120 Ga. App. 470 (170

SE2d 844) (1969). We need not decide what effect the client's death might have on the privilege, as the victim's emotional problems must be considered irrelevant to the issues in this case. As stated in *Henderson v. State,* 234 Ga. 827, 828 (218 SE2d 612) (1975): "As a general rule, the character of a murder victim is irrelevant and inadmissible in the murder trial. See Code § 38-202. It is unlawful to murder a violent and ferocious person, just as it is unlawful to murder a nonviolent and inoffensive person. *Doyal v. State,* 70 Ga. 134, 148. Proof of violent and turbulent character of the deceased becomes admissible when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the accused was honestly seeking to defend himself. *Black v. State,* 230 Ga. 614 (3) (198 SE2d 314) [1973], and cits." The defendant's testimony in this case established a *prima facie* showing that the victim was the assailant; but his testimony does not give rise to an inference that he reacted in self-defense, i.e., that he used only such force as he reasonably believed necessary "to prevent death or great bodily injury to himself . . ." Code Ann. § 26-902. This is particularly true in light of his superior strength and the nature of the injuries which he inflicted on her. Thus, even assuming *arguendo* that the victim had a reputation for violence and that the psychologist would have testified to this effect, neither of which assumptions are supported by anything in the record, the psychologist's testimony would not have been admissible.

4. The appellant also enumerates as error the trial court's exclusion of other evidence allegedly showing the victim's reputation for violence. For the reasons stated in Division 3, supra, this evidence was also irrelevant to any issue in the case. Furthermore, the evidence in question established at most only specific acts of violence by the accused, and it is well settled that the general character of the deceased for violence cannot be established by specific acts. *Black v. State,* supra.

5. The trial court did not err in admitting an autopsy photo of the victim over the objection that it had no probative value and was calculated to inflame the passions of the jury. This photo was admissible to prove that the person autopsied was in fact the victim. Futhermore, it was merely cumulative of other photos of the body taken at the scene, and therefore its admission could not have been harmful to the appellant. See *Mooney v. State,* 243 Ga. 373, 394 (254 SE2d 337) (1979); *Lee v. State,* 247 Ga. 411 (2) (276 SE2d 590) (1981).

6. The court's charge to the jury was not in error for any reason assigned.

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED APRIL 6, 1982.

*Edwin M. Saginar,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Margaret V. Lines, Andrew Weathers, Assistant District Attorneys,* for appellee.