43237. BOBO v. THE STATE.
(349 SE2d 690)

HUNT, Justice.

Thomas Jerald Bobo was indicted for burglary, aggravated as-

sault, and murder arising from an incident in which the victim, Officer David Hagin, and the witness, Officer Colleen Sullivan, were shot while investigating a burglary in progress. Bobo's original conviction was set aside by this court at 254 Ga. 146 (327 SE2d 208) (1985).

Prior to retrial, Bobo moved for the disclosure of the psychiatric history and examinations of Officer Sullivan, the state's main witness. His defense continues to be that he was not the perpetrator. He sought to impeach her eyewitness identification testimony by showing that she suffered from "post-traumatic stress syndrome," which affected her memory and perception. The trial court ruled the communications privileged and denied the motion. We granted Bobo's application for interlocutory appeal.

OCGA § 24-9-21 provides: "There are certain admissions and communications excluded on grounds of public policy. Among these are . . . . (5) Communications between psychiatrist and patient."

1. Bobo contends that no privileged relationship existed between Sullivan and the psychiatrists whom she consulted. The record shows that Sullivan voluntarily sought assistance from the psychiatrists who examined her. The requisite confidential relationship of psychiatrist and patient is thus established. *Kimble v. Kimble*, 240 Ga. 100, 101 (239 SE2d 676) (1977).

2. He next contends that Sullivan waived the privilege by allowing psychiatric testimony to be made public in her workers' compensation cases. That is not the law. OCGA § 24-9-40 provides that "the privilege [of confidentiality of medical records] shall be waived to the extent that the patient places his care and treatment or the nature and extent of his injuries at issue in any civil or criminal proceeding. This Code section shall not apply to psychiatrists." The psychiatrist-patient privilege is not waived when a party who claims it is seeking to recover damages for injuries of a mental and emotional nature. *Wilson v. Bonner*, 166 Ga. App. 9, 16 (303 SE2d 134) (1983). The privilege is not waived when a third party is present, who is a necessary or customary participant in the consultation and treatment. *Sims v. State*, 251 Ga. 877 (5) (311 SE2d 161) (1984). Nor is the privilege waived when the person claiming it has made disclosures in separate, unrelated actions. See *Associated Grocers Co-op v. Trust Co.*, 158 Ga. App. 115 (3) (279 SE2d 248) (1981), for the proposition that disclosures that are not made pursuant to litigation do not defeat the attorney-client privilege.

3. Bobo contends that the statutory privilege must yield to his right of confrontation, which he asserts is superior to the statutory privilege and the public policy that it enunciates.[1] He relies on

---

[1] *Developments in the Law — Privileged Communications*, 98 Harvard Law Review

*United States v. Lindstrom*, 698 F2d 1154 (11th Cir. 1983), which was a federal prosecution in the State of Florida. There the trial court had limited cross-examination of the key government witness about her prior psychiatric treatment, and had denied the defendants access to the witness' psychiatric records. The Court of Appeals ruled that the psychiatric history and records provided critical impeachment evidence.

The state argues strenuously that *United States v. Lindstrom,* supra, is distinguishable because no statutory privilege was involved in that federal prosecution and indeed that court found no such privilege to exist. We note here, however, that the court in making its decision relied upon Fed. R. Evid. § 501: "The privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience [except in civil actions governed by state law]." This so called "rule of reason" is explored fully in *In re Zuniga*, 714 F2d 632 (6th Cir. 1983), where the Sixth Circuit recognized the psychiatrist-patient privilege, then balanced the interests protected by shielding the evidence with those advanced by disclosure and decided the privilege must yield.

Similarly, in *Lindstrom*, that court recognized all of the policy reasons for the privilege, but held such a "privilege" could not prevail where the privileged information was at the heart of the defendant's case. While the privilege should be given the utmost deference, when the privilege of a witness stands in the way of the defendant's right to confront the witnesses against him, then, upon a proper showing by the defendant, the balance must be tipped in favor of his constitutional rights and the search for the truth. See *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982). Compare *Davis v. Alaska*, 415 U. S. 308, 319 (94 SC 1105, 39 LE2d 347) (1974) (right of confrontation is paramount to a state policy protecting juvenile offenders); *Greene v. Wainwright*, 634 F2d 272 (5th Cir. 1981) (right of confrontation requires that defendant be allowed to cross-examine the prosecuting police officer about his mental condition and the bizarre criminal actions he was involved in at the time of an alleged drug sale); *United States v. Society of Independent Gasoline Marketers of America*, 624 F2d 461 (4th Cir. 1979) (error to deny access to hospital records revealing delusional and hallucinatory state of chief witness); *In re Rob-*

---

1450, 1547 (1985). See generally 1545-1552. Four privacy interests are discussed as rationales for a physician-patient privilege: (1) control of private information that is disseminated about oneself; (2) the reasonable expectation of privacy in confidential communications; (3) freedom from government intrusion into important personal decisions; and (4) the inviolability of the individual's body, which includes information conveyed during medical treatment. See also *In re "B.,"* 482 Pa. 471, 484 (394 A2d 419, 425) (1978), and *In re Lifschutz*, 85 Cal. 829 (467 P2d 557, 567) (1970).

*ert H.*, No. 12516 (54 USLW 2635) (May 20, 1986) (where defendant makes a proper showing, rape crisis counselor's testimony is admissible) with *Hanlon v. State*, 162 Ga. App. 46 (3) (290 SE2d 285) (1982), where the evidence was not relevant.[2]

Thus, we must also conclude that *in a proper case* a witness' statutory privilege must give way where countervailing interests in the truth-seeking process demand such a result.[3]

4. In order to abrogate the psychiatrist-patient privilege, the defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him.

The privilege established by OCGA § 24-9-21 (5) prohibits the defendant from engaging in a "fishing expedition" regarding a witness' consultations with a psychiatrist. Therefore, a defendant may not explore such evidence unless he makes allegations sufficient to establish a prima facie need for its discovery by a proper motion for a pretrial hearing. At the ensuing inquiry, the psychiatrist would be available to the defendant for discovery of his findings and any statements made by the patient-witness to him material to the issues on trial. The trial court must, consistent with the demands of due process, then delineate those communications available to the defense for use at trial. Conversely, any communications not central to the defense must remain privileged and inadmissible at trial. *State v. Pierson*, 39 Cr.L.R. 2453 (Conn. Sup. Ct. 1986).[4] In the case before us, such a special pretrial hearing was held in which the psychiatrists testified as to what their testimony would be if called as witnesses at the trial.

One, Dr. Villaneuva, had treated the witness during her surgical recuperation from the shooting and had diagnosed her as suffering from traumatic depressive reaction. He testified that the dominant characteristic of her mental state at that time was depression and that difficulty in concentrating was also an aspect of this reaction, which could be ongoing.

The other two testifying psychiatrists had treated the witness in relation to her claims for workers' compensation and pension benefits resulting from her disability to work as a police officer after undergo-

---

[2] Compare *People v. Dist. Ct.*, #85SA343 (54 USLW 2633, Colo. Sp. Ct., June 2, 1986).

[3] As McCormick has said: "[The] solution is to recognize . . . that the privilege is not an absolute, but a qualified one, which must yield if the trial judge finds that the evidence of the communication is required in the due administration of justice." McCormick on Evidence 2d ed. at p. 174.

[4] Under the Connecticut procedure, where the patient-witness refuses to waive the privilege as to matters ruled to be central to the defense, then that witness, whom the defendant seeks to impeach, may not testify against him at trial. We need not decide whether such a rule is necessary at this time.

ing this stressful experience. Dr. Berry first saw the witness just after the first trial in March 1982, when she was referred to him by the police department chaplain, and Dr. Rolland examined her in July 1983. Both psychiatrists testified that their conversations with her did not focus on the details of her ability to identify the perpetrator, but on the experience itself as the stressful event which resulted in her suffering from post-traumatic stress syndrome, the predominating feature of which is extreme anxiety, which in turn prevented her from returning to police work.

Other characteristics of this syndrome include memory loss and constant reliving of the traumatic experience. The defendant urges therefore that her psychiatric condition greatly affects her credibility as the only eyewitness and her resulting identification of the defendant as the perpetrator. Thus, he contends, his constitutional right to explore her mental condition is *central* to his defense that she has mistakenly identified him.

The gravamen of the doctors' testimony is that the witness suffers from post-traumatic stress syndrome which characteristically includes memory loss. No evidence was presented by them which directly shows that she is unable to identify or unsure of her identification of the defendant as the assailant.

On the other hand, other impeaching evidence is already available to the defendant. At the first trial a hypnotist, who was also a psychiatrist, at the request of the state, had attempted to hypnotize Officer Sullivan in order to enhance her ability to remember the perpetrator. The hypnotist testified that he was unsuccessful in this attempt in part because of her emotional state which he attributed to stress from the trauma of the incident. Because there is no psychiatrist-patient privilege where a witness agrees to be interviewed by an expert called by the state, *Emmett v. Ricketts*, 397 FSupp. 1025, 1038 (N.D. Ga. 1975), the information now sought is and was already available to the defense.[5]

Likewise, at the first trial, Officer Sullivan was questioned about her statements to other state witnesses concerning her official reports and her lineup identification. Additionally, the trial court admitted the testimony of another psychiatrist who was hired by the police to help Sullivan recall the description of the perpetrator through the use of sodium pentothal. He and the hypnotist were examined concerning what she had disclosed to them. See 254 Ga. at 148 (3) (a).

We thus hold that the defendant has failed to show the necessity for the admission of this privileged information and the trial court

[5] Since this evidence of the fact that Officer Sullivan was then suffering from post-traumatic stress syndrome is available, the defendant may also offer expert testimony as to the characteristics of that condition.

properly refused to grant his request.

*Judgment affirmed. All the Justices concur, except Marshall, C. J., Smith and Weltner, JJ., who concur specially, Bell, J., who concurs in the judgment only and Gregory, J., who dissents.*

WELTNER, Justice, concurring specially.

The majority opinion removes the absolute protection of privileges, which our law has recognized for many decades, and casts them upon the doubtful scales of another "balancing" test. By thus weakening the patient-psychiatrist privilege, we also diminish other established privileges, notably as to communications between husband and wife, between attorney and client, and among grand jurors.

All of this is done in the name of "confrontation." Yet, it need not be. "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U. S. ___ (106 SC 292, 295, 88 LE2d 15) (1985).

I would not inflate the concept of "confrontation" to admit of an inquisitorial scrutiny into private concerns that long have been shielded by the statutory law of our state. See OCGA § 24-9-21. Accord *Tiller v. State,* 159 Ga. App. 557 (1) (284 SE2d 63) (1981).

I am authorized to state that Chief Justice Marshall and Justice Smith join in this special concurrence.

GREGORY, Justice, dissenting.

In my view the defendant will be denied the right of confrontation under the majority opinion. The witness will be allowed to give testimony identifying the defendant as the perpetrator of the crime, but the defendant will be denied what might prove to be critical cross-examination of the witness on that subject because the area he wishes to explore is shrouded in secrecy by the psychiatrist-patient privilege. A defendant must be afforded the right to confront the witnesses against him. At the same time there is a very great need in our society for protection of communications between psychiatrists and patients. There is a way to preserve both and I would follow that way here.

Where a witness testifies on direct examination about a given subject, but on cross-examination refuses to be further examined on that same subject, claiming his constitutional privilege against self-incrimination, the proper remedy is for the court to strike that witness' direct testimony on the given subject. *Smith v. State,* 225 Ga. 328 (7) (168 SE2d 587) (1969); *Emmett v. State,* 232 Ga. 110 (1) (205 SE2d 231) (1974); *Rasnake v. State,* 164 Ga. App. 765 (2) (298 SE2d 42) (1982); *United States v. Cardillo,* 316 F2d 606, 610 (2nd Cir.

1963). While this case does not involve a constitutional privilege, it nonetheless involves a privilege which I consider essential to the proper rendering of psychiatric treatment. Thus, I would follow the rule used in cases of the privilege against self-incrimination. The witness will be protected in that the privilege will prevent exposure of the confidential information. At the same time the defendant on trial will be protected in his right to be confronted by the witnesses against him because direct testimony which cannot be cross-examined due to the privilege will be eliminated.

I recognize the cases cited above would not follow the rule for eliminating direct testimony where the matter as to which the privilege is claimed is collateral only. But here the matter goes to the heart of the case and bears directly on the identification testimony given by the witness upon which the State's case must stand or fall.

It is also necessary to provide further limitations on the application of the rule to the psychiatrist-patient privilege. If a witness claims the right against self-incrimination there is a way around the privilege by granting immunity from prosecution to the witness. That safety valve is missing in psychiatrist-patient privilege cases. Therefore, the trial judge should conduct an in-camera investigation into the privileged communications to allow disclosure of all relevant information not specifically objected to by the witness. Beyond that, I would afford the privilege but strike the direct testimony.

DECIDED OCTOBER 29, 1986.

*Axam & Altman, Robert Altman,* for appellant.
*Lewis R. Slaton, District Attorney, H. Allen Moye, Assistant District Attorney, Michael J. Bowers, Attorney General,* for appellee.