FINAL COPY
295 Ga. 430

S14A0926. COOKSEY v. LANDRY et al.

THOMPSON, Chief Justice.

Before he committed suicide in September 2012, twenty-two-year-old Christopher Landry for several years had been under the care of appellant Crit Cooksey, a psychiatrist. In August 2012, Dr. Cooksey prescribed both Seroquel and Cymbalta for Christopher, two drugs that contain a "black box warning" from the Food and Drug Administration which warns of an increased risk of suicidal thinking and behavior in young adults and recommends that medical professionals prescribing the drugs monitor patients for worsening or emergent suicidal thoughts and behavior. Following Christopher's death, his parents, appellees Lisa and Michael Landry,[1] began investigating a potential medical malpractice, wrongful death, and survival action against Dr. Cooksey and made multiple requests for copies of Christopher's psychiatric records. Dr. Cooksey on each occasion refused to produce the records, claiming they are protected from disclosure by Georgia's psychiatrist-patient privilege. See OCGA § 24-5-

_____

[1] Michael Landry has been appointed administrator of Christopher's estate.

501 (a).[2]

Appellees filed a complaint seeking a permanent injunction directing Dr. Cooksey to turn over all of Christopher's psychiatric records. Appellees argued that without the records they would be unable to investigate whether a cause of action exists against Dr. Cooksey, and they would be unable to gain relevant and necessary information upon which to base the expert affidavit required to initiate a medical malpractice claim. See OCGA § 9-11-9.1. The trial court, without reviewing Dr. Cooksey's files, concluded that equity supported appellees' position and issued an injunction directing Dr. Cooksey to produce to appellees "all records pertaining to the medical treatment and history of Christopher Michael Landry."[3] Dr. Cooksey appealed from the trial court's order and filed a motion for an emergency stay which this Court granted. Having reviewed the

---

[2] OCGA § 24-5-501 (a) (5) provides that certain admissions and communications, including communications between a psychiatrist and patient, are excluded from evidence on grounds of public policy. Subsection (a) (8) also excludes from evidence as privileged

> [c]ommunications between or among any psychiatrist, psychologist, licensed clinical social worker, clinical nurse specialist in psychiatric/mental health, licensed marriage and family therapist, and licensed professional counselor who are rendering psychotherapy or have rendered psychotherapy to a patient, regarding that patient's communications which are otherwise privileged by paragraph (5), (6), or (7) of this subsection[.]

[3] The requested records do not appear to have been provided to the trial court and have not been made part of the record on appeal.

2

record and applicable law, we conclude that the trial court erred to the extent it exercised its equitable powers to order the production of information protected from disclosure by Georgia law. Accordingly, we affirm the order of the trial court in part and reverse and remand to the trial court in part for further action consistent with this opinion.

1. The issue to be decided by the trial court in this appeal was a legal one, whether the psychiatric records sought by appellees constitute privileged matters protected from disclosure under Georgia law. Accordingly, we review the trial court's legal determinations de novo. Hankla v. Postell, 293 Ga. 692, 693 (749 SE2d 726) (2013) (using de novo standard of review where issue to be decided was purely legal).

2. Appellees filed their complaint seeking the trial court's assistance, through the exercise of its equity jurisdiction, in obtaining a copy of Christopher's psychiatric records. Conceding that there exists no statutory authority requiring Dr. Cooksey to produce the records, they argued that they have a right to bring a civil claim against Dr. Cooksey, see OCGA § 51-1-27 and OCGA § 51-4-4, that the psychiatrist-patient privilege found in OCGA § 24-5-501 (a) impedes their right by protecting psychiatric-patient

3

communications from disclosure, and therefore, the legal processes available to them provide an inadequate remedy. In support of their argument, they correctly cite both statutes and case law recognizing the authority bestowed upon our superior courts to assist through equity "every person who is remediless elsewhere . . . to enforce any right recognized by the law." OCGA §§ 23-4-20; 23-1-3; Brown v. Liberty Oil & Refining Corp., 261 Ga. 214 (2) (403 SE2d 806) (1991). The trial court, without reviewing Dr. Cooksey's files and without making any distinction between privileged and non-privileged information, in turn directed that the entirety of Christopher's psychiatric records be provided to appellees based on its conclusion that equity required their production. To hold otherwise, the trial court concluded, "would effectively tie [appellees'] hands behind their back[s] in pursuing their investigation."

While we agree with appellees that a civil action arising out of Christopher's suicide may be authorized under Georgia law and agree with the trial court that application of the protections afforded psychiatrist-patient communications by OCGA § 24-5-501 (a) may pose a hardship to appellees in the investigation of potential claims against Dr. Cooksey, neither of these factors authorized the trial court to require the production of privileged communications

4

contrary to OCGA § 24-5-501 (a). The first maxim of equity is that equity follows the law. Equity cannot, therefore, "override . . . the positive enactments of the statutes." Lewis v. Bd. of Ed. of Lowndes County, 183 Ga. 687, 690 (189 SE 233) (1936). "'Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity.' 27A AmJur2d 595, Equity, § 109 (1996). Although equity does seek to do complete justice, OCGA § 23-1-7, it must do so within the parameters of the law." Dolinger v. Driver, 269 Ga. 141 (4) (498 SE2d 252) (1998) (equity could not be used to force school officials to allow students to participate in graduation ceremony when they had no legal right to do so); Hopkins v. Virginia Highland Assoc., 247 Ga. App. 243, 249 (541 SE2d 386) (2000) (equity could not be used to grant easement in sewer line where established law provided that property is not burdened with easement when subsequent bona fide purchaser takes without notice of the easement).

As a matter of public policy, Georgia law "has long provided for the confidentiality of communications between [a] psychiatrist and patient." Kennestone Hosp., Inc. v. Hopson, 273 Ga. 145, 148 (538 SE2d 742) (2000). The primary purpose of the privilege "is to encourage the patient to talk freely

5

without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental disorders." (Citation and punctuation omitted.) State v. Herendeen, 279 Ga. 323, 325-326 (613 SE2d 647) (2005). Communications between certain mental health providers, including communications between psychiatrists and patients, are, therefore, protected from disclosure.[4] OCGA § 24-5-501 (a); Herendeen, supra, 279 Ga. at 327. The psychiatrist-patient privilege remains inviolate even though the patient's care and treatment or the nature or extent of the patient's injuries are put in issue in a civil proceeding. See OCGA § 24-12-1 (a) and former OCGA § 24-9-40. The strength of the psychiatrist-patient privilege is further evident in that the privilege is held only by the patient and waiver of the privilege must be expressly made by the patient, or, in the absence of an express waiver by the patient, one seeking the disclosure of privileged mental-health records must establish a waiver by "the patient's 'decisive unequivocal conduct

---

[4] The protections afforded these communications extend to communications between or among a psychiatrist and other mental health professionals listed in OCGA § 24-5-501 (a) (8) and include a psychiatrist's conclusions that originated in communications between the patient and the psychiatrist. See Johnson v. State, 254 Ga. 591 (331 SE2d 578) (1985).

reasonably inferring the intent to waive[.]'"[5] Herendeen, 279 Ga. at 327.

Moreover, and of primary importance in this case, is the fact that unlike other recognized privileges, the psychiatrist-patient privilege survives the death of the patient.[6] See Sims v. State, 251 Ga. 877, 881 (311 SE2d 161) (1984);

[5] Applying these rules, our courts have determined that the privilege is not waived when a party claiming the privilege puts at issue in a civil proceeding the nature and extent of his or her emotional or mental injuries, see Mincey v. Georgia Dept. of Community Affairs, 308 Ga. App. 740, 745 (708 SE2d 644) (2011), is not waived when the person claiming the privilege makes disclosures in a separate, unrelated proceeding, see Bobo v. State, 256 Ga. 357, 358 (349 SE2d 690) (1986) and Trammel v. Bradberry, 256 Ga. App. 412, 424 (6) (568 SE2d 715) (2002), is not waived when communications are made in the presence of a third party necessary to the patient's treatment, Sims, supra, 251 Ga. at 881, and is not waived by the patient's failure to timely object to a request for privileged information. See Kennestone Hosp., Inc., supra, 273 Ga. at 149 ("Given the importance of the privilege in encouraging and protecting confidential communications concerning the emotional and mental health of individuals, . . . [the] silence and failure to act in response to a request for privileged matter . . . does not waive the party's privilege by implication."). At the same time, the psychiatrist-patient privilege is limited in that it applies only to psychiatrist-patient communications, not to all psychiatric records. Plunkett v. Ginsburg, 217 Ga. App. 20, 21 (456 SE2d 595) (1995). Thus, the fact of treatment and the dates on which treatment was rendered are not privileged. See Herendeen, supra, 279 Ga. at 327; Plunkett, supra, 217 Ga. App. at 21. Nor are communications between or made in the presence of the patient and any third person who was not present as a necessary or customary participant in the consultation and treatment of the patient. See Sims, supra, 251 Ga. at 881.

[6] Appellees urge this Court to distinguish this case on the ground that the psychiatrist-patient privilege has no application when the patient is deceased. This argument fails for several reasons. First, it is clear from the cases cited that the privilege survives the death of the patient. Second, appellees' argument ignores the recognition that it is the promise of confidentiality that encourages patients to openly discuss their emotional and mental health issues. If psychiatrist-patient communications were protected only until the patient's death, patients might not feel as free to make the disclosures necessary for effective treatment, thereby impeding the primary goal of the privilege. See Herendeen, supra, 279 Ga. at 325-326.

7

Boggess v. Aetna Life Ins. Co., 128 Ga. App. 190, 192 (196 SE2d 172) (1973) (discussing attorney-client privilege). Consistent with the protections afforded psychiatrist-patient communications even after a patient's death, our legislature has determined that a deceased patient's representative cannot waive the psychiatrist-patient privilege. See OCGA § 31-33-4 (providing that statutes authorizing the release of health records to a deceased patient's representative "shall not apply to psychiatric, psychological, or other mental health records of a patient"); OCGA § 37-3-166 (a) (8.1) (authorizing mental health facilities to release a deceased patient's mental health records "to the legal representative of [the] deceased patient's estate, except for matters privileged under the laws of this state.").

The dissent, recognizing that there is no Georgia law authorizing the waiver of the psychiatrist-patient privilege by a deceased patient's representative, urges this Court to nevertheless create such a right as "a matter of public policy." Yet, it offers no authority for this Court's adoption, as "a matter of public policy," of a ruling directly contrary to statutory laws enacted

by our legislature based on "grounds of public policy." [7] See OCGA § 24-5-501 (a) (5) (stating that protected psychiatrist-patient communications are excluded from evidence on "grounds of public policy").  The dissent's interpretation of the clear language of OCGA § 31-33-4 exempting psychiatric records from its disclosure provisions to mean that "the estate representative may . . . waive the [psychiatrist-patient] privilege on behalf of the deceased patient" comports with neither logic nor rules of statutory construction.

Because under Georgia law confidential communications between a psychiatrist and patient may not be disclosed absent waiver by the patient and a trial court may not utilize its equitable powers to afford relief contrary to the law, we conclude the trial court erred to the extent its order granting injunctive relief requires the disclosure of privileged information.  Appellees cite Brown v. Liberty Oil & Refinery Corp., supra, 261 Ga. 214, as authority for the trial

---

[7] We note in response to the dissent that neither OCGA § 24-5-501 (a) nor this opinion should be read as authorizing a psychiatrist to shield himself or herself from potential liability by asserting the psychiatrist-patient privilege on the patient's behalf.  See Dissent at 437.  Instead, our opinion recognizes that the *patient* is the holder of the psychiatrist-patient privilege and absent waiver *by the patient*, privileged communications may not be disclosed.  Similarly, we do not fail "to recognize the *right* of the patient's survivors to waive the privilege," id. at 438 (emphasis supplied), inasmuch as they currently have no such right under Georgia law.

9

court's use of its equitable powers in this case. Brown, however, is distinguishable. The plaintiffs in Brown were minor children seeking to maintain a wrongful death action arising out of their mother's death. The children's father, who was by statute given a right to pursue the wrongful death claim, could not be located and would not pursue such a claim. See OCGA § 51-4-2 (a). We held that the factual circumstances of that case demanded the exercise of the trial court's equitable powers because the minor children had no other legal right to maintain an action for the wrongful death of their mother. Brown, supra, 261 Ga. at 216. By allowing the children to pursue a wrongful death action, equity followed "the analogy of the law where no rule was directly applicable." See OCGA § 23-1-6. Compare Lewis, supra, 183 Ga. at 690 (equity could not be used to override statute limiting use of school funds to payment of debts for the current school year); Persoll v. Scott, 64 Ga. 767, 769 (1880).

In contrast, OCGA § 24-5-501 (a) is a positive statutory enactment specifically precluding the relief sought by appellees in their complaint. Moreover, unlike the children in Brown who were seeking the right to pursue a wrongful death claim, appellees have both the legal right to maintain an action

10

for the wrongful death of their son and the ability to seek Dr. Cooksey's files through normal discovery procedures. The fact that appellees' legal claim may be made more difficult to prove because of well-established evidentiary rules or that proper application of the psychiatrist-patient privilege within such proceeding would likely result in the non-disclosure of protected communications does not authorize the use of a trial court's equitable powers contrary to well-established law. The inability to discover potential evidence within a legal proceeding following proper application of our rules of evidence is not the same as having an incomplete legal remedy or no legal remedy at all.

Accordingly, we conclude that the trial court erred by requiring the disclosure of records or information regarding privileged communications between Dr. Cooksey and Christopher and among or between Dr. Cooksey and any other mental health professional listed in OCGA § 24-5-501 (a) (8) who was involved in Christopher's treatment and to whom protected communications were disclosed. That portion of the trial court's order, therefore, is reversed. The trial court's order is affirmed to the extent it requires disclosure of any non-privileged records or information. Because Dr. Cooksey's files were not reviewed by the trial court and no findings have been made as to what

11

information is privileged or whether the privilege may have been waived by Christopher, the case is hereby remanded to the trial court. The trial court is directed on remand to: (1) review Dr. Cooksey's files to determine, in conformance with this opinion and other applicable law, whether there are any non-privileged records or information in the files; (2) determine with regard to privileged information whether there was a waiver of the privilege; and (3) require the timely disclosure of all non-privileged records and information and all records or information for which the privilege has been waived.

3. We conclude by emphasizing that it is no small matter for a court, given its focus on the pursuit of truth and justice, to hold that potentially relevant evidence is shielded from disclosure. Our legislature, however, has determined that the public policies supporting the creation of a mental health privilege necessitated enactment of a nearly absolute privilege, one without exception if the patient is deceased or the nature of the patient's mental condition is put at issue. As explained by the United States Supreme Court when it recognized a psychiatrist-patient privilege under its own federal evidentiary rules,

if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."

Jaffee v. Redmond, 518 U. S. 1, 18 (116 SCt 1923, 135 LE2d 337) (1996), quoting Upjohn Co. v. United States, 449 U. S. 383, 393 (101 SCt 677, 66 LE2d 584) (1981) (discussing attorney-client privilege). Likewise, to allow a trial court, through the exercise of its equitable powers and its own notion of what is right, to require disclosure of privileged communications would bring uncertainty to Georgia's well-defined psychiatrist-patient privilege and eviscerate its effectiveness. The interests protected by OCGA § 24-5-501 are weighty and cannot simply be set aside in even the most sympathetic of circumstances to allow individuals to search through psychiatric records with the hope of discovering evidence. Bobo, supra, 256 Ga. at 360 (psychiatrist-patient privilege "prohibits the defendant from engaging in a 'fishing

13

expedition' regarding a witness' consultations with a psychiatrist").

    <u>Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur, except Benham and Hunstein, JJ., who dissent.</u>

    BENHAM, Justice, dissenting.

    In some jurisdictions, the authority of a deceased patient's representative to waive the psychiatrist-patient privilege in the event of the patient's death is provided by statute.[8]  No express authority is found in Georgia for the waiver, by a deceased patient's representative, of the evidentiary privilege afforded to communications between psychiatrist and patient.  I am of the opinion that this Court should hold as a matter of public policy that, at least in the factual

---

    [8] In California, for example, the personal representative of the patient, if the patient is dead, is defined as a "holder of the privilege" who may waive the psychotherapist-patient privilege, and other statutory privileges.  Cal. Evid. Code §§ 912, 993.  In Illinois, see 740 Ill. Comp. Stat. 110/10 (a) (2) (1996) ("Records or communications may be disclosed in a civil proceeding after the recipient's death when the recipient's physical or mental condition has been introduced as an element of a claim or defense by any party claiming or defending through or as a beneficiary of the recipient, provided the court finds, after in camera examination of the evidence, that it is relevant, probative, and otherwise clearly admissible; that other satisfactory evidence is not available regarding the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from any injury which disclosure is likely to cause.").

scenario presented in this case, the representative of the deceased patient should have the authority to act on behalf of the deceased to waive the psychiatrist-patient privilege where that representative is asserting a claim on behalf of the survivors or the patient's estate against the very health care professional who is asserting the privilege as a shield to such a claim. That is not the intended purpose of the evidentiary privilege. Its purpose is to protect the patient, along with the public interest in promoting mental health care, not the doctor.[9]

In discussing the public policy reasons behind the psychotherapist-patient privilege, this Court has stated:

> Protecting confidential mental health communications from disclosure serves an important private interest and a public interest. *Jaffee v. Redmond*, [518 U. S. 1, 11 (116 SCt 1923, 135 LE2d 337) (1996)]. As far as the individual patient's private interest is concerned, confidentiality is a sine qua non for successful psychotherapeutic treatment since a psychotherapist's ability to help a patient is completely dependent upon the patient's willingness and ability to talk freely, and assurances of confidentiality and privilege foster the psychotherapist's ability to function. Id., 518 U. S. at 10. See also *Kennestone Hosp. v. Hopson*, [273 Ga. 145, 148 (538 SE2d 742) (2000)], where we observed that "the purpose of the privilege is to encourage the

---

[9] Compare, for example, the Ohio statute governing the general physician-patient privilege, which expressly states that the privilege does not apply in the case of a medical malpractice claim brought by the patient or the estate of the patient if deceased, Ohio Rev. Code Ann. § 2317.02 (B) (1) (a) (iii).

patient to talk freely without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental disorders." Since "the mental health of our citizenry . . . is a public good of transcendent importance," the privilege serves the public interest "by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem." *Jaffee v. Redmond*, supra, 518 U. S. at 11.

(Punctuation omitted.) *State v. Herendeen*, 279 Ga. 323, 325-326 (613 SE2d 647) (2005). How ironic it is to permit the doctor in this case to assert the patient's privilege and not to recognize the right of the patient's survivors to waive the privilege, thereby permitting the doctor to shield himself from potential liability for providing *unsuccessful* psychotherapeutic treatment or *ineffective* or *inappropriate* treatment, if that is what these records would, in fact, demonstrate.

If the Landrys' son had lived and sought to pursue a malpractice claim against Dr. Cooksey for injury from attempted suicide sustained as a result of Cooksey's allegedly negligent treatment, the son could have waived the privilege, sought his treatment records, and presented them as evidence in the action. See *Wiles v. Wiles*, 264 Ga. 594 (1) (448 SE2d 681) (1994) (a patient may waive the psychiatrist-patient evidentiary privilege). Since the patient,

3

himself, could have waived the privilege for the purpose of protecting his rights, "the same waiver may be made by those who represent him after his death, for the purpose of protecting rights acquired by him." (Citation and punctuation omitted.) *Hier v. Farmers Mut. Fire Ins. Co.*, 104 Mont. 471 (67 P2d 831) (1937) (rejecting a third-party's right to assert the physician-patient privilege with respect to medical records relating to the deceased insured's mental stability at the time he was accused of setting fire to insured property, and recognizing the right of the deceased's representative to waive the privilege). Ironically, again, the effect of the majority opinion is to shield the psychiatrist from disclosure of confidential information in the event the alleged malpractice results in the patient's death, even though disclosure would be permitted in the event the same alleged malpractice results in a less catastrophic injury because the patient survives.

When the survivors of a decedent bring a medical malpractice action relating to the decedent's death, the survivors may assert the decedent's privilege and prevent discovery of his or her psychiatric records by the defendant to the action. See *Dynin v. Hall*, 207 Ga. App. 337 (3) (428 SE2d 89) (1993). But this does not mean the defendant to the malpractice action can

4

assert the privilege intended to protect the patient's interest as a shield to liability. The statutory privilege exists for the benefit of the patient; thus it is the patient who is entitled to the benefits of the privilege. See *Wiles v. Wiles*, supra, 264 Ga. at 595. It rings hollow for the majority to say its holding does not shield the psychiatrist from potential liability but merely recognizes the psychiatrist-patient privilege may be waived only by the patient. For many purposes, an estate representative stands in the place of the deceased after death, and, at least in the factual situation posed by this case, the estate representative may speak for the patient after death for the purpose of asserting the right to psychiatric treatment that meets the appropriate standard of care. It follows that the effective assertion of this right may require the waiver of the privilege, just as the patient would be required to waive the privilege in order to assert this right in life.

I do not believe that the recognition of a right of the estate representative to stand in the shoes of the deceased for purposes of waiving the psychiatrist-patient privilege conflicts with Georgia statutes governing the release of mental health records. OCGA § 31-33-4 states that the provisions of Chapter 33 of Title 31 to the Georgia Code, authorizing release of medical records to patients

5

and other authorized persons, shall not apply to mental health records. Applied literally, OCGA § 31-33-4 would prohibit the release of mental health records to the patient, himself. It seems obvious this is not the intent of the Code section, but that it reasonably means the privilege afforded to mental health records may be waived by the patient and the records thereby released to him. In my opinion, at least under the circumstances present in this case, the estate representative may also waive the privilege on behalf of the deceased patient. OCGA § 37-3-166 (a) (8.1) operates only to exclude privileged matters from those mental health records that may be released to the legal representative of a deceased patient's estate by a facility approved by the state for outpatient or residential mental health treatment. That statute does not apply to the release of otherwise privileged material by a psychiatrist engaged in private practice in response to the waiver of the privilege by the deceased patient's legal representative.

In *District Attorney for the Norfolk District v. Magraw*, 417 Mass. 169 (2) (628 NE2d 24) (1994), the Supreme Court of Massachusetts held that a deceased patient's estate representative may waive the psychotherapist-patient privilege. The court noted that while the Massachusetts statute creating the

6

privilege survives the death of the beneficiary, the patient, it does not address waiver of the privilege by the representative of the deceased patient's estate. Id. at 173. It further noted the rationale behind the privilege, which is that "the most effective assistance of a therapist . . . can be achieved only through open communication, which is likely not to occur absent a guarantee that what the patient . . . says will not be disclosed to others without her consent." Id. The court continued:

> We acknowledge we are not free to water down the legislative policy embodied in the statute. However, a rule allowing waiver of the privilege by the representative of a deceased patient's estate would not disturb the legislative policy. The statutory privilege gives the patient the option of invocation or waiver. When the patient is incompetent, the statute provides that a guardian be appointed to determine whether to invoke the privilege; thus a representative determines whether it is in the patient's best interest to invoke or to waive. There is no reason to allow waiver of the privilege — either by the patient or her guardian — during the patient's life, while disallowing it after her death; waiver of the privilege may be in the patient's estate's best interest when the patient is deceased, just as it may be in her own best interest while she is living.

(Citation and punctuation omitted.) Id. at 173-174. The Georgia privilege statute does not similarly provide for the appointment of a guardian to act on behalf of an incompetent patient to determine whether to invoke or waive the

7

psychiatrist-patient privilege. Nevertheless, I believe the analysis that there is no reason to allow the patient to waive the privilege in life, while disallowing the estate representative to waive it after the patient's death, is a sound one that should be applied to the facts of this case.

I note additionally that the psychiatrist-patient privilege "generally conform[s] in shape and substance to the attorney-client privilege." Paul S. Milich, Ga. Rules of Evidence, § 23:1 (2013). See also OCGA § 43-39-16 ("confidential relations and communications between [a mental health provider] and client are placed upon the same basis as those provided by law between attorney and client"). Both privileges are now codified in the Georgia Evidence Code, OCGA § 24-5-501 (a) (2), (5), and both survive the death of the client. See *Sims v. State*, 251 Ga. 877 (5) (311 SE2d 161) (1984) (psychiatrist-patient privilege); *Spence v. Hamm*, 226 Ga. App. 357 (1) (487 SE2d 9) (1997) (attorney-client privilege). On its face, our Code provides for no exceptions to either privilege. OCGA § 24-5-501 (a) (2), (5). However, in the case of the attorney-client privilege, Georgia courts have nonetheless been willing to abrogate the privilege in circumstances where adhering to it would disserve the interests of justice. See, e.g., *Yarbrough v. Yarbrough*, 202 Ga. 391, 403 (7)

(43 SE2d 329) (1947) (applying "testamentary exception" to attorney-client privilege to sanction disclosure of attorney's communications with client regarding execution of will "to the end that full and complete justice may be done"); *Both v. Frantz*, 278 Ga. App. 556 (5) (629 SE2d 427) (2006) (applying "crime-fraud exception" to attorney-client privilege to allow attorney testimony regarding communications in furtherance of criminal or fraudulent activities); *Peterson v. Baumwell*, 202 Ga. App. 283 (2) (414 SE2d 278) (1991) (applying "joint attorney exception" to permit disclosures where attorney had jointly represented clients whose interests subsequently became adverse); see also *Schaffer v. Fox*, 303 Ga. App. 584 (2) (693 SE2d 852) (2010) (permitting introduction into evidence of communications between a deceased client and her attorney, noting that attorney-client privilege cannot be invoked for the benefit of "strangers to the attorney-client relationship"). Just as our courts have been willing to recognize limited exceptions to the attorney-client privilege, we should also be willing to forego a rigid application of the psychiatrist-patient privilege in limited circumstances, where the application of that privilege operates only as an impediment to the pursuit of justice on behalf of the very individual it was intended to protect.

9

Our appellate courts have never addressed the issue of whether the representatives of a deceased client's estate may waive the deceased's attorney-client privilege to obtain documents from an attorney for use in a legal malpractice action against that attorney. However, at least one of our sister jurisdictions has recognized the right of the deceased client's representative to waive the privilege in those circumstances. See Mayorga v. Tate, 752 NYS2d 353 (N.Y. App. Div. 2002) (daughter of deceased, to whom estate's executor had assigned deceased's cause of action for legal malpractice, had authority to waive deceased's attorney-client privilege to obtain production of documents relevant to legal malpractice action). If our appellate courts would be inclined to follow the New York appellate court's lead in the attorney-client privilege/legal malpractice context — which I believe we would be — then by analogy we should be inclined towards the same result in the psychiatrist-patient/medical malpractice context.

In short,

> it makes no sense to prohibit an [estate representative] from waiving the . . . privilege of his or her decedent, where such prohibition operates to the detriment of the decedent's estate, and to the benefit of an alleged tortfeasor against whom the estate possesses a cause of action.

10

Mayorga v. Tate, 752 NYS2d at 359. Thus, I find no offense to the psychiatrist-patient privilege in allowing the representatives of a deceased patient's estate to waive the privilege for the limited purpose of pursuing a potential medical malpractice claim against the very psychiatrist who seeks to assert that privilege to his own advantage.

This Court has already acknowledged that the statutory psychiatrist-patient privilege is not absolute, but that "*in a proper case* [the] statutory privilege must give way where countervailing interests in the truth-seeking process demand such a result." (Emphasis in original.) *Bobo v. State*, 256 Ga. 357, 360 (3) (349 SE2d 690) (1986) (nevertheless holding a criminal defendant, who asserted the privilege must yield to his constitutional right of confrontation, had failed to show the necessity for admission of privileged communications between a witness against him and her psychiatrist). I believe this is a proper factual situation for holding that the statutory privilege that may be asserted *or waived* by a patient may also be waived by the patient's representative upon the patient's death. Here, the estate representative of the deceased patient effectively stands in the shoes of the patient and should be permitted to exercise the patient's right to waive the privilege granted to

11

communications between him and his psychiatrist in order to pursue a potential claim against the psychiatrist. I reject the majority's conclusion that to permit disclosure of such communications to an estate representative under the specific circumstances of this case would eviscerate the effectiveness of the privilege. Instead, it would permit the estate representative to pursue the *patient's* interest in obtaining effective and appropriate treatment. See *State v. Herendeen*, supra. Otherwise, because of the patient's death, there may be no effective recourse for the failure to provide such treatment.

I am authorized to state that Justice Hunstein joins in this dissent.

Decided June 30, 2014.

Equity. Cobb Superior Court. Before Judge Bodiford.

Huff, Powell & Bailey, Randolph P. Powell, Jr., for appellant.

Henry Spiegel Milling, Philip C. Henry, Wendy G. Huray, for appellees.