**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 13, 2024**

# In the Court of Appeals of Georgia

A24A0647. IN RE CHARITY MUSE, LPC, BCC.

LAND, Judge.

This is an appeal from an order denying a motion to quash a subpoena compelling counselor Charity Muse to disclose the mental health records of her patient to appellee William Bowman, who is charged with molesting that patient. The trial court concluded that pursuant to *Bobo v. State*, 256 Ga. 357 (349 SE2d 690) (1986), Bowman's need for the records in preparing his defense outweighed Muse's interest in protecting these privileged materials from disclosure. On appeal,[1] Muse

---

[1] Although the case against Bowman remains pending, Muse is entitled to a direct appeal under the collateral order doctrine. "[A] discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance." *Hickey v. RREF BB SBL Acquisitions, LLC*, 336 Ga. App. 411, 413-414 (1) (785 SE2d 72) (2016).

argues that the trial court abused its discretion when it denied her motion to quash because the evidence was insufficient, because it improperly relied on statements made by counsel, and because the protections afforded Muse and her patient against disclosure are inadequate. We find no error and affirm.

"Georgia law provides several privileges related to mental health, which, collectively, are referred to as the 'mental health privilege.'" *DiPietro v. State*, 356 Ga. App. 539, 548 (3) (848 SE2d 153) (2020), quoting *Brown v. Howard*, 334 Ga. App. 182, 185 (1) (778 SE2d 810) (2015). As Muse concedes, we review a trial court's ruling concerning the application of a privilege only for an abuse of discretion. *DiPietro*, 356 Ga. App. at 548 (3).

Thus viewed in favor of the judgment, the record shows that while the alleged victim was a patient of Muse between 2019 and 2022, she described being inappropriately touched by Bowman, her grandfather, starting in 2008, when she was four years old, and ending when she was about nine years old. By 2022, the victim was in counseling twice a week, and her forensic interview makes numerous references to that counseling, including her use of apparently therapeutic terms like "dissociative

disorder."[2] As to this alleged victim, Bowman was eventually charged with four counts of child molestation, two counts of child cruelty, and one count of enticing a child for indecent purposes.

Bowman sought disclosure of the victim's counseling records, arguing that they provided evidence of coaching. When the State named Muse as the counselor, Bowman served her with a subpoena duces tecum for "[a]ny and all counseling files, records, appointments, notes, memorandums, or any other document related to the treatment of [the victim]." Muse moved to quash the subpoena on the grounds that it was overbroad and violated federal regulations concerning the disclosure of medical records in a judicial proceeding. See 45 CFR § 164.512 (e). At the hearing on the motion to quash the subpoena, Bowman argued that given the victim's age when the alleged molestation began, her recollections were understandably "foggy" and her outcry limited to her immediate family such that Muse's notes would be critical evidence in the case.

At the conclusion of the hearing, the trial court reserved ruling on the in camera procedures to be followed by the parties and later entered an order finding that

---

[2] The State disclosed the forensic interview in connection with a superseded indictment.

Bowman had carried his burden under *Bobo*, supra, of showing a need for Muse's materials as critical and not otherwise available to his defense. The trial court noted that the information was subject to federal regulations but "was properly subject to disclosure" under them. The trial court also ordered that "[i]n an attempt to protect confidentiality and limit access . . . , the information subject to the subpoena will be turned over to" the court by November 1, 2023, and would "only be subject to] review and use by the parties . . . pursuant to Court supervision."

1. In *Bobo*, supra, our Supreme Court held that "when the privilege of a witness stands in the way of the defendant's right to confront the witnesses against him, then, upon a proper showing by the defendant, the balance must be tipped in favor of his constitutional rights and the search for the truth." 256 Ga. at 359 (3). The Court went on to specify that

> [i]n order to abrogate the psychiatrist-patient privilege, the defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him. . . . [A] defendant may not explore such evidence unless he makes allegations sufficient to establish a prima facie need for its discovery by a proper motion for a pretrial hearing. At the ensuing inquiry, the psychiatrist would be available to the defendant for discovery of his findings and any statements made by the patient-witness

4

to him material to the issues on trial. The trial court must, consistent with the demands of due process, then delineate those communications available to the defense for use at trial. Conversely, any communications not central to the defense must remain privileged and inadmissible at trial.

Id. at 359-360 (4). This Court has recently noted that prima facie evidence can be sufficient, "if not rebutted," to sustain a trial court's discretionary determination that mental health records should be disclosed. *In re Frost*, 366 Ga. App. 45, 48 (1) (b) (880 SE2d 650) (2022).

Muse cites *Frost* for her assertion that the trial court abused its discretion. That was indeed our judgment in *Frost*, but that defendant averred only his "understanding and belief that the minor child made statements" relevant to his defense and "did not address the purported subject matter of those statements[.]" 366 Ga. App. at 48 (1) (b). By contrast, Bowman has pointed out that this victim disclosed only to Muse and her immediate family, referenced her counseling with Muse ten times in the course of the forensic interview, and used technical language such as "dissociative disorder" she may well have learned from Muse, who may have made the initial disclosure to law enforcement in the case. The trial court had this and other evidence before it to

support its discretionary determination that the records sought are "critical" to Bowman's defense and that "substantially similiar evidence is unavailable to him." *Bobo*, 256 Ga. at 360 (4); see also *U. S. v. Lindstrom*, 698 F.2d 1154, 1164-1168 (11th Cir. 1983) (reversing a trial court's denial of access to a complainant's mental health records when the defense's chief argument was that the complainant was motivated by a vendetta arising from a mental illness that had required hospitalization in the past). On this record, we cannot conclude that the trial court abused its discretion.

2. Muse also asserts that the trial court should not have relied on Bowman's counsel's statements in his place concerning the contents of the victim's forensic interview. This ignores the fact that "attorneys are officers of the court [such that] a statement to [that] court in their place is prima facie true and needs no further verification unless the same is required by the court or the opposite party." (Citation and punctuation omitted.) *State v. Rosenbaum*, 305 Ga. 442, 451 (2) (a) (826 SE2d 18) (2019). Here, Muse made no objection to counsel's statements, and has thus waived any objection concerning them on appeal. See id. at 451-452 (2) (a) (in the absence of an objection by the State, defendants' attorney's proffer was sufficient evidence of their "demands").

3. Citing to the hearing transcript, Muse also argues that the trial court's procedures for protecting the confidentiality of her records was insufficient. But "the trial court's written order controls over any oral statements made at the hearing," *State v. McCargo*, 352 Ga. App. 501, 503 (835 SE2d 317) (2019), and this order specified, citing *Bobo*, that the information would be held by the court and would "only be subject to review and use by the parties to the litigation pursuant to Court supervision." Under *Bobo*, the trial court is required to release only "material" information and to maintain as privileged "any communications not central to the defense." 256 Ga. at 360 (4); see also *Frost*, 366 Ga. App. at 47-48 (1) (a). This process remains to be completed. In the absence of any evidence that the trial court has violated this standard, we will not presume error.

*Judgment affirmed. Miller, P. J., and Markle, J., concur.*