**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 12, 2013**

# In the Court of Appeals of Georgia

A13A0024. EASTER v. THE STATE.

RAY, Judge.

After a jury trial, Mark Easter was convicted of rape, kidnapping, false imprisonment and impersonating a police officer. He appeals the denial of his motion for new trial, asserting the following enumerations of error: (1) the trial court erred in denying his motion to produce the victim's psychiatric records; (2) the trial court erred in denying his motion to exclude; (3) the trial court erred in denying his motion for a mistrial and a curative instruction; (4) the trial court erred in restricting his general voir dire questions; and (5) the trial court erred in denying his motion for a continuance. Easter additionally argues that the prosecutor's closing statement improperly shifted the burden of proof onto the defendant. Because each of these enumerations lacks merit, we affirm Easter's convictions.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the trial evidence shows that on March 7, 1999, the victim, a 17-year old female, hopped a turnstile at a MARTA station to catch a train. Easter approached the victim. He identified himself as an undercover MARTA policeman, showed her his badge, told her she was under arrest, and placed her in handcuffs. Easter then picked up the MARTA service phone and gave a code to give the appearance that he was a MARTA officer.

Easter forced the handcuffed victim to leave the MARTA station with him, informing her that they were going to the police station. Easter then took the victim to an abandoned apartment; he told the victim that "he had a friend that was a pimp, and if [she] worked for the friend that he would not arrest [her]." The victim refused. Easter then informed her that he had a gun, pepper spray, and a knife, and that he wanted to have sex with her. The victim said that she did not want to have sex with him, but that she would not fight back because she was afraid that he would hurt her. Easter raped the victim.

Easter then dressed and walked with the victim to a telephone at a hotel in the city. The victim testified that she did not call out for help because she was still handcuffed under her coat and was afraid that Easter would hurt her. After making

2

the call, Easter forced the victim to walk down the street where they were picked up by a taxicab driven by Easter's friend. Easter and his friend drove her to an apartment on Buford Highway where they introduced her to a third man, who informed the victim that he would meet her that weekend. The taxi driver then drove them to another apartment where she was released from her handcuffs. Once inside, Easter instructed the victim to take a shower. He then sprayed her with cologne and forced her to have sex with the taxi driver.

After about two hours, Easter forced the victim back into the taxi and drove to the first apartment complex on Buford Highway. Easter knocked on the door, and no one answered. Easter then forced the victim into the apartment's laundry room and raped her again. The victim testified that Easter used a condom both times he raped her.

Easter then drove the victim to an Office Max store and began to xerox fliers for a business called "Massage World." Easter told the victim that he was making the flyers because he had a prostitution business and that he was a pimp. As Easter walked the victim back from the restroom, the victim noticed an Office Max employee and signaled "911" to her using her fingers behind her back. The victim then mouthed "please" to the employee. The employee then mouthed back "are you

3

okay?" to the victim, who shook her head no. The employee then mouthed "It's going to be okay." A policeman entered the store as Easter went to the front desk of the store. Easter put his bag down and then ran out the back door of the store.

The police took the victim to the hospital, where a rape kit was performed. The treating physician noted in her report that the victim had bruising around both wrists that would have been consistent with being placed in handcuffs and noted redness and irritation to the victim's vaginal area.

The rape kit was then tested by the GBI crime lab. Spermatozoa was located in the rape kit, and a DNA comparison matched the spermatozoa to Easter's DNA.

1. In his first enumeration of error, Easter contends that the trial court erred when it refused to grant his motion for disclosure of the psychiatric history of the victim under *Bobo v. State*, 256 Ga. 357 (349 SE2d 690) (1986). Easter claims that he was entitled to the victim's psychiatric records because he did not deny having sex with the victim; thus, the case against him rested upon the victim's credibility. "Had he been able to further attack her credibility with materials gleaned from mental health records, the outcome might have been very different." We are unpersuaded.

In *Bobo*, our Supreme Court held, in a plurality opinion, that a witness' statutory psychiatrist-patient privilege must yield to the defendant's constitutional

right of confrontation if the defendant makes a "showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him." Id. at 360 (4). Our Supreme Court noted that the psychiatrist-patient privilege "prohibits the defendant from engaging in a 'fishing expedition' regarding a witness' consultations with a psychiatrist. Therefore, a defendant may not explore such evidence unless he makes allegations sufficient establish a prima facie need for its discovery."[1] Id.

At the motions hearing and in his appellate brief, Easter points to no evidence indicating that the victim's psychological records are necessary to his defense. Rather, Easter merely speculates that the records might show that the victim's "story was different than what we expect her to testify at trial, and any other information that may go to her credibility." Easter has not shown that the victim's mental condition

---

[1] In his motion for disclosure of the victim's psychiatrist history, Easter also requested that the trial court conduct an in camera inspection of the victim's files to determine whether it contained any pertinent information relative to the defense. In its order denying the motion, the trial court declined to conduct an in camera inspection. Whether or not the trial court erred in refusing to conduct such an in camera inspection was not raised as an enumeration of error, as Easter objects only to the failure of the trial court to provide him with "access to this information." Accordingly, whether or not the trial court erred in refusing to conduct an in camera inspection is not properly before us on appeal. See *Mitchell v. State*, 255 Ga. App. 585, 591 (7) (565 SE2d 889) (2002).

or treatment was relevant to, or affected the credibility of, her allegations. In the absence of such evidence, Easter has failed to demonstrate the required necessity to obtain the victim's psychiatric history. See *Atkins v. State*, 243 Ga. App. 489, 496-497 (3) (533 SE2d 152) (2000).

2. Easter alleges that the trial court erred when it allowed the State to admit into evidence the contents of the bag Easter left behind when he fled the Office Max store. Specifically, Easter objects to the admission of condoms and "Massage World" flyers found inside the bag.

"Admission of evidence is a matter which rests largely within the sound discretion of the trial judge, and if the evidence has a tendency to establish a fact in issue, that is sufficient to make it relevant and admissible." (Citations and punctuation omitted.) *Davidson v. State*, 231 Ga. App. 605, 608 (3) (499 SE2d 697) (1998).

Easter relies upon *Simpson v. State*, 271 Ga. 772 (523 SE2d 320) (1999) for the assertion that

> evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material . . . can only be admitted if it can be linked to the crime charged.

6

Id. at 774 (1). Easter argues that "the mere possession of condoms" and flyers for a massage business have "nothing to do with rape." However, this argument is unavailing, as the items from the bag admitted at trial corroborate the victim's testimony. The victim testified that Easter used a condom both times he raped her; that Easter had the black bag with him; that on several occasions, he had told her that he was a pimp; and that he had told her that the "Massage World" flyers were for his prostitution business. Further, when Easter was arrested, he had a business card in his pocket for "Massage World." See *Miller v. State*, 219 Ga. App. 213, 217 (3) (464 SE2d 621) (1995). The trial court did not err when it allowed the contents of the bag into evidence.

3. Easter asserts that the trial court erred when it refused to grant a mistrial or give a curative instruction based upon the testimony of Detective James Beavers. Detective Beavers spoke with the victim shortly after she was rescued at the Office Max. He testified at trial that the victim looked "very tired. Her eyes were red as if she had been crying. She had on her clothing some red or orange substance that could have been pepper spray." Without citing to any legal authority, Easter contends that Detective Beavers' passing reference to the potential for the presence of pepper spray

on the victim's clothing was cause for a mistrial because there had been no evidence presented at trial that the victim had been sprayed with pepper spray.

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." (Footnote omitted.) *Ottis v. State*, 271 Ga. 200, 201 (3) (517 SE2d 525) (1999). See *Smith v. State*, 288 Ga. 348, 350 (3) (703 SE2d 629) (2010) (mistrial should be granted only where "essential to the preservation of the defendant's right to a fair trial") (citation omitted).

In this case, we find no prejudice and no abuse of discretion. At trial, the victim testified that Easter told her that he had pepper spray and that he had threatened to spray her with pepper spray if she tried to run or if she looked at anyone else. However, there was no testimony that Easter actually used pepper spray on her. Further, immediately after making the statement regarding the potential for pepper spray on the victim's clothing, the State and the trial court questioned Detective Beavers further, and he then admitted that he "didn't know" whether the substance was pepper spray. The trial court did not abuse its discretion in denying this motion.

8

4. Easter contends that the voir dire examination was overly restrictive. He first argues that the trial court erred in refusing to allow him to ask prospective jurors if they "believe[d] that sometimes people are wrongfully accused of a crime." He further argues that the trial court erred in refusing to allow him to ask whether the prospective jurors' "ability to be fair and impartial [would] be affected by testimony that involves explicit sexual language and acts." We find no error.

> The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. Questions of a technical legal nature and questions that call for prejudgment are improper in a voir dire examination. Since there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice, the scope of the voir dire examination, of necessity, must be left to the sound discretion of the trial court.

(Citations omitted.) *Bryant v. State*, 288 Ga. 876, 880 (4) (a) (708 SE2d 362) (2011). See *Waldrip v. State*, 267 Ga. 739, 742 (2) (482 SE2d 299) (1997) (finding no error in prohibiting questions "which required the jurors to prejudge the case") (citation omitted). Although we note that there is nothing inherently objectionable to the voir dire questions that defense counsel sought to ask, we find that the trial court did not

9

abuse its discretion in failing to allow them because a review of the record in this case shows that the voir dire examination was "broad enough to allow the parties to ascertain the fairness and impartiality of the prospective jurors." (Citation and punctuation omitted.) *Hall v. State*, 259 Ga. 412, 414 (1) (383 SE2d 128) (1989).

5. Without citing to any relevant case law, Easter argues that the trial court erred in denying his motion for a continuance premised on the assertion that the State was tardy in providing its DNA evidence. We disagree.

"All applications for continuances are addressed to the sound legal discretion of the court and, if not expressly provided for, shall be granted or refused as the ends of justice may require." OCGA § 17-8-22. This Court will not reverse a trial court's denial of a motion for a continuance "except upon a clear abuse of the trial court's discretion. Moreover, to be entitled to a new trial based upon the denial of his motion for a continuance, the defendant has the burden to show that he was harmed by that denial." (Citations and punctuation omitted.) *Williams v. State*, 317 Ga. App. 248, 256 (3) (730 SE2d 726) (2012).

Even assuming that the trial court erred in denying the motion for a continuance, Easter has failed to demonstrate that any prejudice resulted from the denial of his motion. Easter argues that the State's tardy filing of the DNA evidence

10

meant that he was unable to review it with his expert until mid-trial. This, he argues, prevented him from offering to admit in his opening statement that Easter had engaged in sexual relations with the victim, and that "[t]his was prejudicial to the [d]efendant[] since the entire case turned on the credibility of the [victim's] testimony." Contrary to his assertion, Easter has failed to demonstrate that any prejudice resulted from the denial of his motion for continuance. His trial counsel still argued during his opening statement that there was a potential that the victim had consented to engage in sexual relations with Easter. Counsel stated that

> [t]his case is essentially about what [the victim] says happened that night. [The victim] is the only witness who can testify firsthand as to exactly what happened that night . . . whether she agreed to pimp for him, agreed to have sex with him or another man. Those are all issues that only she can testify to.

Easter's trial counsel further presented the possibility that the victim had consented to one or more of the alleged sexual encounters during closing argument. Moreover, there was overwhelming evidence beyond the victim's testimony that the victim did not consent to sex with Easter, including bruises on her wrists consistent with handcuff usage, that Easter's bag contained handcuffs, an Office Max employee's

11

testimony that the victim had signaled her distress to her, and that there was redness and irritation to her vaginal area. We find no abuse of discretion.

5. Easter contends that the prosecutor committed error when, during closing argument, he improperly shifted the burden of persuasion onto the defendant. However, Easter "did not object to the now challenged comments by the prosecutor. In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." (Citation and punctuation omitted.) *Powell v. State*, 291 Ga. 743, 746 (2) (a) (733 SE2d 294) (2012). Further, "a trial judge has no obligation . . . to rebuke a prosecuting attorney or give a curative instruction in the absence of a timely objection." (Citations omitted.) Id.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*