**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2022**

# In the Court of Appeals of Georgia

A22A0847. IN RE FROST.

HODGES, Judge.

Jerri Frost, a licensed clinical social worker, appeals from the trial court's order requiring her to produce a child's privileged mental health records for in camera inspection. The child's stepmother, Dana Malick, served Frost with a subpoena duces tecum.[1] Malick, who has been charged with two counts of child molestation and two counts of cruelty to children, seeks records of her stepson's mental health counseling sessions with Frost in order to aid her defense against these charges. For the reasons that follow, we reverse.

---

[1] "A subpoena duces tecum is defined as 'a subpoena ordering a witness to appear and to bring specified documents, records, or things.'" (Punctuation omitted.) *French v. State*, 288 Ga. App. 775, 776 (1) (665 SE2d 224) (2007), citing Black's Law Dictionary (8th ed. 2004).

"An appellate court generally reviews for an abuse of discretion the application of a privilege." *DiPietro v. State*, 356 Ga. App. 539, 548 (3) (848 SE2d 153) (2020); see *Wiles v. Wiles*, 264 Ga. 594, 598 (2) (448 SE2d 681) (1994) (applying abuse of discretion standard to review trial court's decision that patient was entitled to the benefit of the mental health privilege).

> Georgia law provides several privileges related to mental health, which, collectively, are referred to as the 'mental health privilege.' The primary purpose of the mental health privilege is to encourage the patient to talk freely without fear of disclosure and embarrassment, thus enabling the psychiatrist to render effective treatment of the patient's emotional or mental disorders.

(Citation and punctuation omitted.). *DiPietro*, 356 Ga. App. at 548 (3). OCGA § 24-5-501 (a) (7) extends this privilege to the communications between a licensed clinical social worker and her patients. The child at issue has not waived this privilege, and Malick does not contend that the mental health records she seeks are not privileged. Rather, she argues that they are necessary to her defense so that she can attack the child's credibility and to aid her expert witness in forming an opinion.

In the trial court, Malick moved for a hearing pursuant to *Bobo v. State*, 256 Ga. 357 (349 SE2d 690) (1986). In *Bobo*, a defendant indicted for murder, burglary,

2

and assault sought to attack the credibility of a police officer who witnessed the murder by obtaining the officer's psychiatric records. Id. at 358. The *Bobo* Court upheld the trial court's refusal to admit the privileged information, finding that the defendant had failed to satisfy the test showing the records were necessary to his defense. Id. at 361-362 (4). In a plurality opinion, the *Bobo* Court recognized that the privilege established by the predecessor to OCGA § 24-5-501 (a) (7)

> prohibits the defendant from engaging in a "fishing expedition" regarding a witness's consultations with a psychiatrist. Therefore, a defendant may not explore such evidence unless he makes allegations sufficient to establish a prima facie need for its discovery by a proper motion for a pretrial hearing.

*Bobo*, 256 Ga. at 360 (4).

In her motion for the *Bobo* hearing, Malick sought to abrogate the mental health privilege and obtain issuance of a subpoena duces tecum for the child's counseling records and statements he made to Frost during counseling.[2] Malick asserted that the child "ha[d] not been truthful" and that she needed his mental health

---

[2] Malick also sought counseling records and statements the child had made to another counselor who is not part of the instant appeal.

records "to impeach [his] credibility and to rebut [his] allegations of abuse [against her]." Malick then served Frost with a subpoena duces tecum seeking:

> The complete counseling record of the minor child . . . including but not limited to mental health records and psychotherapy notes. Mental health records include but are not limited to medical prescriptions, session start and stop times, frequency of treatment, clinical tests, summary of diagnosis, symptoms, prognosis, etc. Psychotherapy notes are your personal notes.

Frost filed a motion for a protective order and to quash, contending that Malick's *Bobo* motion was a "fishing expedition" that was "[l]acking any actual prima facie support . . . ."

The trial court then held a hearing at which the parties' counsel presented argument. Near the end of the hearing, the trial court discussed whether Malick's "conclusory," as opposed to factual, allegations were sufficient to satisfy *Bobo*. The trial court permitted the parties to submit additional post-hearing briefing. In her brief, Malick argued that she needed the child's mental health records not just to attack his credibility, but also because she planned to call an expert witness to testify about the typical behavior patterns of sexually abused children. Nothing was submitted identifying this witness or substantiating what the expert would need to

4

form an opinion. Her brief contended that "[t]he expert cannot properly make a judgment call (or give an opinion) solely on uncorroborated statements [from Malick] and without reviewing . . . counseling records." Malick also averred that she "might not testify at trial[,]" and that even if she did, other witnesses including "her estranged husband, may rebut or contradict her testimony." With her post-trial brief, she submitted a sworn affidavit, in which she averred that:

> Between the winter of 2019 and the spring of 2020, to the best of my knowledge, [the minor child], who lived with me and my husband, did not avoid me, did not express to me or anyone that I know that he had any fear of me, did not withdraw from others, did not suffer from anxiety, and was not hypervigilant. Also, to my knowledge, [the minor child's] grades during that time period were just as good as they were before and after.

The trial court subsequently issued the order now under appeal[3], ordering Frost, in language identical to that of her subpoena duces tecum, to produce the child's complete mental health records, including but not limited to psychotherapy notes and prescription records, for in camera inspection "prior to dissemination."

---

[3] The order was drafted by Malick's counsel.

1. Frost contends that the trial court erred in ordering her to produce the records because Malick failed to make a prima facie showing of need. See *Bobo*, 256 Ga. at 360 (4). We agree.

(a) As an initial matter, Frost correctly points out that the trial court's order says *only* that the records must be produced "for an in camera inspection by [the trial c]ourt *prior to dissemination.*" (Emphasis supplied.) The order, by contrast, also granted Malick access to the child's records from the Department of Family and Children Services,[4] but provided that the trial court would first "determine whether such records appear reasonably calculated to lead to the discovery of admissible evidence and whether the records are otherwise admissible under the rules of evidence."

In any in camera review of the privileged records at issue here to determine whether they are "material to the issues on trial[,] . . . [t]he trial court *must*, consistent with the demands of due process, then *delineate those communications available to the defense for use at trial.* Conversely, any communications not central to the defense *must remain privileged and inadmissible* at trial." (Emphasis supplied.) *Bobo*, 256 Ga. at 360 (4).

---

[4] The Department of Family and Children Services is not part of this appeal.

To the extent that the trial court explicitly provided for the dissemination of the documents, *in toto* and without conducting such a delineation process, the trial court abused its discretion.

(b) Further, Malick has failed to establish "a prima facie need[,]" *Bobo*, 256 Ga. at 360 (4), for the child's mental health records, which the trial court ordered to be produced, in camera, in their entirety.

> In order to abrogate the [mental health] privilege, the defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is otherwise unavailable to him. The privilege established by OCGA § [24-5-501] prohibits the defendant from engaging in a 'fishing expedition' regarding a witness's consultations with a [licensed clinical social worker]. Therefore, a defendant may not explore such evidence unless he makes allegations sufficient to establish a prima facie need for its discovery by a proper motion for a pretrial hearing.

*Bobo*, 256 Ga. at 360 (4). "[P]rima facie evidence is merely such evidence as in the judgment of law is sufficient, and if not rebutted remains sufficient." (Citation and punctuation omitted.) *Hourin v. State*, 301 Ga. 835, 841 (2) (b) (804 SE2d 388) (2017).

7

Malick, again, is seeking the mental health records to impeach the child's credibility and to inform the testimony of her expert witness regarding the typical behavior of sexually abused children.[5] At and prior to the hearing, Malick made only conclusory allegations regarding her need for the mental health records, averring in her *Bobo* motion only that it was her "understanding and belief that the minor child made statements during counseling" with Frost. The motion did not address the purported subject matter of those statements. After the hearing, however, Malick provided the trial court with an affidavit regarding her observations that the child did not avoid her, express fear of her, withdraw, suffer from anxiety, appear hyper vigilant, or experience shifts in his grades at school.

In *Easter v. State*, 322 Ga. App. 183 (744 SE2d 374) (2013), similar to the situation in the instant case, the defendant appealed from the trial court's refusal to

---

[5] Malick, presumably to establish her need for the documents at issue to inform the testimony of her expert witness, points us to *Darst v. State*, 323 Ga. App. 614, 622 (2) (a) (ii) (746 SE2d 865) (2013) (physical precedent only) (involving defendant's allegations that counsel rendered ineffective assistance in failing to call an expert witness who could have testified that typical behavioral patterns in sexually abused children, "particularly if some force was involved" include avoiding the perpetrator, expressing fear of the perpetrator, psychological symptoms such as depression, anxiety, withdrawal from others, and hyper vigilance), and *Hall v. State*, 201 Ga. App. 626, 627 (2) (411 SE2d 777) (1991) ("The 'typical' behavior of sexually abused children is not within the ken of the average juror and is, therefore, a proper matter for expert testimony.").

grant his pre-trial *Bobo* motion for disclosure of the victim's psychiatric records, which he sought to impeach her credibility. This Court upheld the trial court's decision, finding that Easter "points to no evidence indicating that the victim's psychological records are necessary to his defense. Rather, Easter merely speculates that the records might show that the victim's 'story was different than what we expect her to testify at trial, and any other information that may go to her credibility.'" Id. at 186 (1).

Here, the trial court's order provides that the "*complete* counseling record of the minor child" be produced for in camera inspection. (Emphasis supplied.). Yet Malick has neither argued nor pointed us to any evidence or proffer indicating that *any* – much less *all* – of the child's counseling sessions with Frost and her related diagnoses, prognoses and psychotherapy notes, or his prescriptions, related to the alleged molestation, cruelty, or abuse. Indeed, Frost was not even treating the child prior to his allegations, which is the time frame on which Malick focuses. This lack of specificity does not comport with our law. "The need for specificity is particularly acute where, as here, the records sought by the subpoena necessarily would contain confidential and privileged communications. . . . [The Malick subpoena and the trial court's order mirroring its language] sought such information yet [were] totally

lacking in specificity[.]" *Plante v. State*, 203 Ga. App. 33, 34 (1) (416 SE2d 316) (1992) (finding no error where trial court, prior to in camera review, quashed subpoena seeking "all" of the victim's psychiatric and treatment records because it was "clear that the purpose of the subpoena was not to obtain any specific item of evidence for introduction at trial but rather to enable appellant to search through the hospital's records in hopes of obtaining information which might possibly impeach the child's credibility"); see generally *Davidson v. State*, 232 Ga. App. 250, 252 (501 SE2d 510) (1998) (affirming trial court's decision to limit cross-examination when it found that a youth's privileged mental health information defendant sought was not relevant, where youth testified that when he was molested by defendant, he was being treated by psychiatrist and taking medication, but that his treatment was not related to the molestation).

Further, Malick has presented no evidence, nor has she even argued, that the child's mental state – which, of course, is at the crux of psychological treatment – has any bearing whatsoever on his credibility such that an examination of his mental health records is necessary. Like the defendant in *Easter*, Malick "has not shown that the victim's mental condition or treatment was relevant to, or affected the credibility of [his] allegations. In the absence of such evidence, [Malick] has failed to

10

demonstrate the required necessity to obtain the victim's psychiatric history." *Easter*, 322 Ga. App. at 186 (1); see also *Glass v. State*, 255 Ga. App. 390, 403 (10) (f) (565 SE2d 500) (2002) (finding that trial counsel did not render ineffective assistance in failing to subpoena victim's psychiatric records where defendant failed to show how victim's mental condition or treatment affected or was relevant to the credibility of her rape allegations); *Davidson*, 232 Ga. App. at 252 (2) (recognizing that "certain forms of mental disorder have high probative value on the issue of credibility") (citation and punctuation omitted); see generally *United States v. Lindstrom*, 698 F2d 1154, 1159-1166 (2) (11th Cir. 1983) (examining limits on cross examination and access to psychological records and recognizing that some mental disorders can affect a witness's credibility while others do not).

In seeking the child's privileged mental health records to attack the credibility of the child and other witnesses, and to aid the testimony of the expert witness she plans to use, Malick sought to use the subpoena as an instrument of discovery; the broadly-worded subpoena did not, however, provide the specificity required to show the relevance of the documents sought, or that this was something other than a fishing

11

expedition into records held by a third party. See *Plante*, 203 Ga. App. at 34 (1);[6] see

generally *Gregg v. State*, 331 Ga. App. 833, 834-835 (771 SE2d 486) (2015)

(discussing OCGA § 17-16-1 et seq., which provides for reciprocal discovery

between the State and the defendant in criminal felony cases).

---

[6] We note that in *Pennsylvania v. Ritchie*, a plurality of the United States Supreme Court wrote that

> The opinions of this Court show that *the right to confrontation is a trial right*, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. The ability to question adverse witnesses, however, *does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony*. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude *at trial* to question witnesses. In short, the Confrontation Clause only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

(Citations and punctuation omitted; emphasis in original and supplied.) 480 U. S. 39, 52-53 (III) (A) (107 SCt 989, 94 LE2d 40) (1987) (rejecting a claim that the Confrontation Clause afforded a criminal defendant the right to pretrial discovery of confidential child abuse investigative records containing impeachment evidence); accord *United States v. Sardinas*, 386 Fed. Appx. 927, 940-941 (IV) (B) (11th Cir.) (2010) (adopting the plurality view in *Ritchie*).

As Georgia's Supreme Court determined, "*in a proper case* a witness' statutory privilege must give way where countervailing interests in the truth-seeking process demand such a result." (Footnote omitted; emphasis in original.) *Bobo*, 256 Ga. at 360 (3). For the reasons discussed above, this is not such a case.

2. Because of our determination in Division 1, we need not reach Frost's second enumeration of error.

*Judgment reversed. Barnes, P. J., and Brown, J., concur*.